[Civ. No. 14726. Fourth Dist., Div. One. Feb. 24, 1976.]

THOMAS HINOJOSA et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Andrew Freeman, James N. Pendleton, Norbert Ehrenfreund and Edward K. Curley for Petitioners.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Henry R. Mann, Deputy District Attorneys, for Respondent and for Real Party in Interest.

**OPINION**

**BROWN (Gerald), P. J.**—Petitioners Thomas Hinojosa, Christopher Everett Rodriguez, Henry Hector Rodriguez and Phillip Clemente seek a writ of mandate or prohibition to compel the respondent Superior Court of San Diego County to set aside its order denying discovery of various police records.

On August 10, 1975, at about 1:15 a.m., police responded to Pedro Espinoza's complaint of loud music being played in a building about half a block from his home. Upon arrival of the police the loud music was turned down, but was renewed shortly after they left. Espinoza summoned the police again at about 3:30 a.m.

Officers Jackson and Weber arrived at the scene. Jackson testified he contacted Hinojosa outside the building and asked him to turn down the

music. Hinojosa walked into the building without answering. Jackson followed him inside and repeated his request. Hinojosa turned and pushed Jackson backward toward the door. Jackson told Hinojosa he would be arrested if he used force again. Hinojosa reacted by pushing Jackson harder and saying, "Fuck you. I'll kick your ass." Jackson then arrested him for battery on a police officer and attempted to put handcuffs on him. Hinojosa began struggling, and about 15 friends, led by Christopher Rodriguez, came to his aid. Jackson got up to face them, and Officer Weber tried to take control of Hinojosa, as Jackson was engulfed and manhandled by the crowd.

Officer Weber testified Sergeant Balliett then entered the room and tried unsuccessfully to calm the crowd. Henry and Christopher Rodriguez, Phillip Clemente, and others, wrested Hinojosa from Officer Weber's grasp. Sergeant Balliett called for "cover" and reinforcements arrived five to six minutes later. Hinojosa was later apprehended outside the building by Weber and Balliett.

All defendants were charged by information with battery upon a peace officer (Pen. Code, §§ 242 and 243) and all except Hinojosa were charged with lynching (Pen. Code, § 405a) and rescue (Pen. Code, § 4550). Hinojosa and Christopher Rodriguez were charged with disturbing the peace (Pen. Code, § 415) and riot (Pen. Code, § 404). Lastly, Hinojosa was charged with resisting an officer (Pen. Code, § 148) and Christopher Rodriguez was charged with advocacy to kill or injure a peace officer (Pen. Code, § 151). Each offense took place within the building when only Officers Weber, Jackson and Sergeant Balliett were present.

On November 3, 1975, Christopher Rodriguez filed a motion for discovery. He sought the records of any internal police investigations into citizen complaints of official misconduct against any police officers involved in his case. He specifically named Weber, Jackson and Balliett and five other policemen.

On November 13, 1975, Phillip Clemente filed a motion for discovery, seeking an order to direct the district attorney and San Diego Police Department to produce all records of complaints of misconduct or use of excessive force pertaining to the officers involved in his case; he named Weber, Jackson and Balliett as well as six other policemen.

On November 14, 1975, Hinojosa joined in the discovery motion of Christopher Rodriguez and in addition asked for the records of any internal police investigation into the incident involved.

On November 25, 1975, Henry Rodriguez joined in the discovery motions of the other petitioners.

The superior court denied each motion without prejudice to renew them at trial.

Petitioners contend the trial court abused its discretion in denying their motions for discovery. We shall explain why we conclude an *in camera* inspection of the police files should be conducted, but restricted to citizen complaints and internal investigations regarding any assaultive behavior or ethnic prejudice displayed by policemen Weber, Jackson and Balliett; and any internal investigation of the incident itself.

■ ". . . [I]n a criminal prosecution an accused is generally entitled to discover all relevant and material information in the possession of the prosecution that will assist him in the preparation and presentation of his defense. (See e.g. *Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 817 [112 Cal.Rptr. 257, 518 P.2d 1353]; *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 536-537 [113 Cal.Rptr. 897, 522 P.2d 305].)" (*Murguia* v. *Municipal Court,* 15 Cal.3d 286, 293 [124 Cal.Rptr. 204, 540 P.2d 44].)

■ A showing of good cause or plausible justification for inspection of the material sought is required, although proof of the existence of the item is not required (*Hill* v. *Superior Court, supra,* 10 Cal.3d 812, 817).

" 'A showing . . . that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, *if it appears reasonable that such knowledge will assist him in preparing his defense . . . .*' " (*Hill* v. *Superior Court,* 10 Cal.3d 812, 817 [112 Cal.Rptr. 257, 518 P.2d 1353].)

In their motions for discovery, petitioners assert they intend to rely on a theory of self-defense. ■ Evidence of bigotry or a proclivity for violence on the part of the officers involved in the alleged assault would be material and relevant to the petitioners' defense. Such evidence is admissible where conduct of a victim in conformity with his character would tend to exculpate a defendant or mitigate the offense (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 537; *People* v. *Curtis,* 70 Cal.2d 347, 356 [74 Cal.Rptr. 713, 450 P.2d 33]; Evid. Code, § 1103).

Petitioners have shown good cause for discovery by general allegations of self-defense (*Joe Z.* v. *Superior Court,* 3 Cal.3d 797, 804 [91 Cal.Rptr. 594, 478 P.2d 26]). Moreover, they have not been able to readily obtain the information through their own efforts. An accused should be provided with the maximum amount of information to illumine his case. Petitioners do not have a ready access to police files, nor are they privy to any official probe into the circumstances of the incident itself. There is no assurance an investigation undertaken by petitioners would reveal the full breadth of relevant material which might be within police files. Ordinarily, an accused would never be in a position to know what complaints, if any, had been filed against particular police officers (*In re Valerie E.,* 50 Cal.App.3d 213, 219 [123 Cal. Rptr. 242]). The files of the officers involved in the assault cannot be omitted from a conscientious search for indications of the assaultive or bigoted character of any victims of the crimes charged against petitioners. However, petitioners' blanket request for all citizen complaints and internal investigations of them, regardless of the nature of the complaints, encompasses traits or acts of the officers which may not relate directly to their propensity for violence or ethnic prejudice, and represents a mere desire for the benefit of all information without regard to its usefulness in preparing a defense. This information would do little to facilitate the ascertainment of facts necessary for a fair trial (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 536) and access to such a broad scope of information was properly denied.

Similarly, the character of the officers who were not victims of the charged offenses and who were not directly involved in the fracas is not sufficiently relevant to the defense to warrant intrusion into those policemen's confidential files. An assault against an arresting officer cannot be justified by the character of a fellow officer who took no part in the arrest.

Let a writ of mandate issue directing respondent to set aside its order denying discovery and to conduct an *in camera* hearing to determine which, if any, of the police files as limited by this opinion contain material relevant to the defense.

Ault, J., and Cologne, J., concurred.