[Civ. No. 49811. Second Dist., Div. Four. Jan. 19, 1978.]

AARON ROBINSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Henry M.diSuvero and Violet C. Rabaya for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Maurice H. Oppenheim, Deputy District Attorneys, for Real Party in Interest.

John H. Larson, County Counsel, and Jan A. Pluim, Deputy County Counsel, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**FILES, P. J.**—This mandate proceeding is brought to review an order of the superior court denying a motion for discovery made by petitioner, who is a defendant in a criminal proceeding.

In the underlying action petitioner is charged with the felony offense of battery upon Deputy Sheriff Mark McKague, in violation of Penal Code sections 242 and 243. The alleged offense occurred in the Los Angeles County jail on June 15, 1976. The evidence received at the preliminary examination indicates that petitioner failed to leave the visiting area of the jail when requested to do so at the close of the visiting hours; and when Deputy McKague attempted to escort petitioner from the room petitioner struck him several times in the face with closed fists. Petitioner has indicated that he expects to show that he acted in self defense against the use of unreasonable force by the officer.

On September 24, 1976, petitioner filed a written motion for discovery, supported by a declaration by his attorney, asking the production of 15 categories of information and documents. When the motion came before the court the People offered to provide some information, and the hearing was put over until October 13. Hearings were held on October 13, 18 and 19, during which three deputy sheriffs testified regarding procedures and record keeping in the sheriff's department. At the conclusion of the hearing on October 19, the trial court made an order that "the requests, except as otherwise granted, are now denied."

Petitioner filed this mandate proceeding October 28, 1976, to compel the superior court to dismiss the action because of the destruction of evidence or in the alternative to compel "discovery as prayed for below by petitioner."

We stayed the trial of the criminal proceeding and issued our alternative writ addressed to the respondent superior court and the People, as real party in interest. The People, through the district attorney, has filed a return, and the county counsel, on behalf of the

sheriff, has filed an amicus curiae brief setting forth his views of the applicable law.

■ We begin with a statement of the nature of a discovery motion in a criminal case, as explained in *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535-537 [113 Cal.Rptr. 897, 522 P.2d 305]:

"A defendant's motion to discover is addressed solely to the sound discretion of the trial court, which has inherent power to order discovery when the interests of justice so demand. [Citations.] Allowing an accused the right to discover is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. [Citations.]

"In accordance with these principles, it has long been held that civil discovery procedure has no relevance to criminal prosecutions. . . .

". . . . . . . . . . . . . . . . . . .

"Therefore, in contrast to the formal requirements for civil discovery, an accused in a criminal prosecution may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial. [Citations.] The requisite showing may be satisfied by general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' "

The petition filed here concedes that the district attorney has provided informal discovery, but petitioner fails to tell us what has been made available to him. We have a reporter's transcript of the October 1976 hearings, which contains a considerable amount of colloquy as well as testimony. From that record we have had to ascertain whether there are items for which petitioner made the requisite showing under *Pitchess* standards, and which have not been furnished to him. For the convenience of counsel and the superior court, we identify items by the paragraph numbers used in the September 24, 1976 motion.

Paragraph 2 asks for names and addresses of all percipient witnesses.

In the trial court petitioner's counsel acknowledged that he had received the arrest report and a representation of the People that it contains the names of all of the witnesses they intend to call. The deputy

district attorney represented that every known percipient witness had been disclosed to the defense and they would give addresses of all witnesses, but would not give out home addresses of peace officers.

Petitioner's position is that there were other visitors who were in the visiting room at the time of the offense, whose names should be supplied by the People or the case should be dismissed.[1]

Testimony was taken concerning the procedure used by the sheriff in admitting visitors to the visiting room. No register or other permanent record of visitors is kept. Each visitor fills out a pass which is in two parts, each of which contains the name of the visitor and the name of the prisoner to be visited. The receptionist tears the pass in two. One part is sent to the module where the prisoner is located. The visitor's seat assignment is entered on the other part, and it is handed to the visitor when the prisoner arrives in the area. The part used to summon the prisoner is thrown away when the prisoner has been brought out. The part used by the visitor is retained by the visitor except in cases when a visitor leaves property for a prisoner. In that event the visitor's portion is kept with the property until it is delivered. Those passes are bundled up and kept for about a week, after which the bundle is destroyed.

Petitioner argues that he is entitled to a dismissal because of the destruction of whatever passes there may have been which would have identified persons present at the time of the alleged battery.

These slips of paper were not intended for use as records. They were prepared for temporary use over periods ranging from a few minutes to a few days. The record supports the finding of the trial court that these papers were innocently and routinely thrown out, without any appreciation of their potential use as a lead to the discovery of testimony in a pending or anticipated case.

Petitioner relies upon *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361] for the principle that the prosecution is under a duty to preserve material which may be helpful in the defense of a

---

[1]The testimony at the preliminary examination shows that the alleged battery occurred after the visiting period had ended and other visitors and prisoners had left the room. At that time petitioner refused to leave his seat, and the altercation occurred when Officer McKague attempted to escort petitioner away. Notwithstanding that testimony we cannot rule out, on this motion for discovery, the possibility that some visitors or prisoners may have been near enough to give competent testimony as to what occurred.

person charged with crime, and that the nonmalicious destruction of such material may compel a dismissal.

In *Hitch,* the defendant was charged with driving under the influence of alcohol. The extent of alcohol in the defendant's system had been tested by a breathalizer, in which a sample of the person's breath passes through a glass test ampoule containing a reagent. The accuracy of the test depends upon the exact quantity of the reagent in the ampoule. The officer administering the test noted the result and then threw away the ampoule. The trial court made a finding that the preservation of the ampoule would have provided information of value to the defense to determine the accuracy of the test result.

The facts of the present case differ from those in *Hitch* in several respects.

The ampoule was used in the preparation of evidence for the pending prosecution, and was itself evidence which might be introduced at the expected trial to demonstrate the accuracy or inaccuracy of the test results. The visitors' slips were not prepared to be used as evidence. They are no more than leads to the identification of persons who might be witnesses and who might otherwise remain undiscovered. The *Hitch* ampoule was a part of the prosecution's preparation. The visitors' slips, as such, had no connection with the alleged offense or prosecutorial activity. It is only coincidental that this alleged battery occurred in a place where some papers with names may have been temporarily available.[2]

The person who had possession of the *Hitch* ampoule must have been aware of its relevance and potential materiality as evidence at the trial. There is no showing that the persons who handled the visitors' passes were aware that a criminal prosecution would develop from an occurrence in the visitor's room on June 15, 1976, or that, if they did know it, that they could appreciate the potential value they might have to petitioner. The rank and authority of those who handled the visitors' passes is not shown. This is not a case of destruction of items which a

---

[2]*Hitch* quotes with approval from *United States* v. *Bryant* (1971) 439 F.2d 642, 652 [142 App.D.C. 132], which states: "Accordingly, we hold that *sanctions for nondisclosure based on loss of evidence will be invoked in the future unless the Government can show that it has promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures designed to preserve all discoverable evidence* gathered in the course of a criminal investigation." (12 Cal.3d at p. 652; italics added in *Hitch* opinion.)

responsible public official should have known might be useful in a forthcoming criminal prosecution.

None of the authorities have gone so far as to require a dismissal of a criminal prosecution under circumstances comparable to those appearing here. There must be reasonable limitations upon what should be expected of public employees in anticipating the needs of persons subsequently to be charged with a criminal offense. On this record it was not improper for the trial court to conclude that it is not reasonable to expect the People to have found and preserved the visitors' slips for the day on which the alleged offense occurred. The failure to do so does not require dismissal of the criminal charge.

Paragraph 4 asks for statements of persons the People intend to call as witnesses.

The district attorney has advised this court that his office has made available to petitioner everything it has of this kind. The record contains no showing to the contrary.

Petitioner argues that he is entitled to see any witness statements obtained by or for the county counsel in anticipation of civil litigation arising out of the altercation which is the basis of the criminal charges. The record made in the trial court shows that petitioner filed a notice of claim with the board of supervisors. At the hearing on the discovery motion, petitioner called a witness who testified that when the county counsel requests an investigation of a civil claim, that work is done by a civil claims unit in the sheriff's office. The witness did not know whether any investigation for the county counsel had been requested or undertaken with respect to petitioner's claim.

The ambiguity of the trial court record on this subject is removed by a declaration filed in this court by a deputy county counsel stating that the records of the Los Angeles Superior Court show that on June 9, 1977, two lawsuits were filed by Aaron Robinson against the County of Los Angeles, Mark L. McKague and others, involving an altercation between Robinson and McKague and another person in the men's central jail on June 16, 1976; and that "the office of the county counsel is in possession of only the information forwarded to it by the Los Angeles County Sheriff's Department in its investigation of Petitioner's claim."

The county counsel has also submitted a declaration of a lieutenant in the sheriff's department who is the supervisor for the civil claims investigation unit, describing some of the procedure in a civil claims investigation. The declarant states that investigators research departmental records and may interview departmental personnel, but they do not elicit statements from others. The declarant also states that the investigators prepare a confidential memorandum, "which overviews the collected information." The collected reports and the memorandum are submitted to the county counsel. A copy is retained by the civil claims unit, but is not open to scrutiny of the public or other members of the department except to provide information to department executives concerning the civil claim and pending lawsuits.

The relevance of any factual information forwarded by the sheriff to the county counsel is clear enough. Though it seems to us quite improbable that the sheriff would send to the county counsel witness statements or other factual matter which he did not also furnish to the district attorney, a motion for discovery should not be decided on such judicial speculation. The justification for seeking full disclosure is self-evident.

The fact that neither the sheriff nor the county counsel is a party to the underlying criminal proceeding is not necessarily a reason for the trial court's refusal to grant a motion for discovery of information possessed by either of those agencies. The purpose of the motion is to enlist the aid of the trial court and the prosecutor in providing the information which the defendant needs in preparing for trial. In *Hill* v. *Superior Court* (1974) 10 Cal.3d 812 [112 Cal.Rptr. 257, 518 P.2d 1353], the prosecutor was required to obtain from the state Department of Justice a "rap sheet" for the information of the defendant. *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 176 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], held that a trial court might order a psychiatric examination of a witness.

■ The decision whether to order production of matters not in the possession of the prosecutor must be a pragmatic one, taking into consideration, among other things, the availability of the matter to the prosecutor and its unavailability to the defense. (See, e.g., discussion in *Hill* v. *Superior Court, supra,* at pp. 817-819.) If the prosecutor is not able

to furnish to the defendant what the trial court orders, the use of the subpoena duces tecum may be necessary.[3]

The county counsel argues that whatever he has relating to the June 15, 1976 occurrence is protected by either the lawyer-client privilege (Evid. Code, § 950 et seq.) or by the work-product privilege (Code Civ. Proc., § 2016, subds. (b) and (g)).

Whether or not the information gathered for the county counsel is protected by the attorney-client privilege depends upon circumstances not revealed in this record. The trial court hearing did not explore that issue and thus we have no basis for discussing it here except to note that a claim of the lawyer-client privilege will have to be decided on an appropriate record when the claim is made.

The work-product privilege stands upon different ground. That doctrine has grown up as a limitation upon pretrial discovery in civil cases. As the Supreme Court pointed out in *Pitchess* v. *Superior Court, supra,* 11 Cal.3d at pp. 535-536, the right of an accused to discover is based upon a reason peculiar to criminal procedure, and "civil discovery procedure has no relevance to criminal prosecutions." Much of what is discoverable by a defendant in a criminal case could be classified as "work product" of the prosecutor and the law enforcement personnel whose duty it is to gather information for the prosecution. (See *Craig* v. *Superior Court* (1976) 54 Cal.App.3d 416, 423 [126 Cal.Rptr. 565].)

What petitioner has asked for in paragraph 4 of his motion is "All statements made by percipient witnesses and witnesses the People intend to call to testify at defendant's trial, related to the incident in question." Such statements are discoverable under the standards set forth in *Pitchess, supra.* If the county counsel has any such statements, their disclosure may not be withheld upon the ground that they are work product.

---

[3]In *Pitchess* v. *Superior Court, supra,* the superior court ordered the prosecution to obtain specified records from the sheriff. The sheriff refused to cooperate. The defendant then obtained a subpoena duces tecum directing the sheriff to produce the records. The sheriff unsuccessfully moved to quash the subpoena, and then sought relief by a writ of mandate. With regard to this procedure, the Supreme Court said: "When the sheriff refused to produce the information, the prosecutor should have invoked process of the court; instead, the burden of so moving was imposed upon the defendant, here the real party in interest." (11 Cal.3d at pp. 534-535.)

Petitioner is therefore entitled to an order of the superior court for the production of such statements, subject to a determination of any claim of lawyer-client privilege which may be asserted.

Paragraphs 7 and 8 ask information from the sheriff's department regarding complaints for excessive use of force or racial hostility by Deputy McKague. The testimony of the witnesses at the hearing in the trial court showed that no such records existed unless they were to be found in McKague's personnel file.

After this testimony had been received the deputy district attorney stated: "Your Honor, I have a Certification of Records from the Los Angeles County Sheriff's Department in regard to the information requested yesterday whether or not there are any other reports in file. I don't believe this is discoverable by counsel. I am more than willing to have the court review the particular certification before it makes a determination on its own whether or not counsel would be entitled to this particular document."

The document which the prosecutor referred to was not otherwise described in the record. In the context of the hearing, it apparently referred to McKague's personnel file. The court stated it would examine the document in camera. Petitioner's attorney objected, asserting he was entitled to see it before the court saw it. The court then stated that because of the objection, it would not look at what the prosecutor offered.

■ Although petitioner's objection to the court's proposal was not well taken, the court was not justified in refusing to look at the document which the prosecution had tendered. The prosecutor explained to the court he was not claiming privilege. His position was that the document was not relevant. Petitioner is entitled to an order from this court requiring the superior court to examine the document tendered by the prosecutor to determine whether it contains anything which petitioner is entitled to see or know about.

■ Paragraph 9 requests identification of all persons involved in 20 altercations with Deputy Mark McKague, together with reports and records concerning those events.

The concept of "twenty altercations" derives from the testimony of McKague at the preliminary examination, where, on cross-examination,

McKague estimated he had been in "about 20" fights with jail inmates. These events are not otherwise described in the record.

A deputy sheriff from the jail division testified that whenever a deputy in the jail division is involved in use of force, he must write a "use of force memorandum" which is delivered to the captain, who ordinarily keeps it about 30 days. Some are eventually destroyed and some may be referred to the internal investigations bureau which may make a report. Some of the memos may find their way to the personnel file of the officer involved. The witness testified that the captain of the jail facility had examined Deputy McKague's personnel file and had told the witness there were no memos in it regarding use of force. This evidence was received without objection, and petitioner's attorney made no request for further information on this subject.

An officer assigned to the internal investigations bureau testified that he had searched the file of the bureau, and found it contained no complaints or reports or files of any type relating to Deputy McKague. The transcript of the preliminary examination contains the testimony of Deputy McKague that so far as he knew, no complaints for excessive use of force had ever been made against him.

On this record the trial court was not required to make any further order with respect to records of the "twenty altercations" except for whatever may develop from the court's examination of the document which has been discussed above.

■ Paragraph 10 asks for "Any and all hospital records, police records or workmen's compensation claims" filed by Deputy McKague in connection with the instant case.

We assume that any "police records" are among the papers in the file of the district attorney which has been furnished to petitioner. At issue is the disclosure of records relating to the injuries sustained by McKague.

The relevance of such records, if any exist, is not disputed. The nature of the injuries, if any, sustained by McKague may be a subject upon which evidence will be received at the trial. Petitioner proposes that the People simply state where any records of this kind exist, so that petitioner may serve subpoenas duces tecum on the custodians.

This proposal is reasonable. The People can easily inquire of McKague as to where the requested records may be. McKague has been cooperating with the prosecution and may be expected to respond if the prosecutor asks him to.

Paragraph 14 asks for materials relating to the practice of the sheriff's department covering the use of flashlights on inmates, and how inmates "are to be touched, beaten and subdued."

A deputy sheriff testified that this subject matter would be covered in the sheriff's manual of policy and ethics. The trial court denied petitioner's request to see the manual.

The brief submitted to this court by the county counsel, on behalf of the sheriff, states that petitioner's counsel may inspect the materials referred to in paragraph 14 at the sheriff's department. Consequently, no order of this court is required.

Paragraph 15 asks for "The record of all batteries committed by either inmates or officers in the Los Angeles county jail for a 2 year period prior to this event and the criminal prosecutions and disciplinary proceedings, if any, instituted therefrom."

Petitioner explains that he wants this information to determine whether he is the victim of discriminatory law enforcement under the standards discussed in *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44]. He asserts that deputy sheriffs constitute a class and jail inmates constitute another class; and he theorizes that if significantly more prisoners than jailers are prosecuted for batteries committed in the county jail, an inference of invidious discrimination may be drawn.

In *Murgia,* the persons seeking to prove discrimination were members of a particular labor organization who had been charged with a variety of minor offenses. Their request for discovery was supported by more than 100 declarations to the effect that both the sheriff's men and the district attorney had taken sides with the employers and the rival union. These declarations indicated that sheriff's deputies had been engaging in and encouraging assaults and other serious criminal conduct which went unpunished, while harassing the members of the disfavored group. In that case the trial court had found that the motion for discovery was supported by a showing of discrimination, but concluded that this would

not be a defense to the pending charges. The Supreme Court held that a defense exists upon a showing of intentional, purposeful discriminatory enforcement based upon an unjustifiable standard. (See 15 Cal.3d at pp. 296-300.) Upon the record which reached the Supreme Court in *Murgia,* there was no occasion to discuss either the minimum showing which must be made for discovery on the equal protection issue, or the kind of information which need be produced. The holding of the case is that "traditional principles of criminal discovery mandate that defendants be permitted to discover information relevant to such a claim." (15 Cal.3d at p. 306.)

In the case which is here, petitioner's request on this subject was supported only by a declaration of his attorney, which contained one factual statement and several expressions of opinion.

The factual statement was that on June 23, 1976, he had had a conversation with a deputy sheriff: "[H]e said to me 'only one officer was filed on last year and he was also fired.' He also said '90% of the time the inmates get what they deserve and we file on them' and 'I always try to get felony complaints on the inmates.' "

The opinions expressed by petitioner's attorney were to the effect that, based upon his two years' experience in examining conditions at the Los Angeles County jail in connection with litigation on behalf of inmates, he believed that a process of discriminatory law enforcement existed whereby "for the same activity" inmates are criminally proceeded against and the guards are not criminally proceeded against.

At the hearing on the motion for discovery, no additional facts were developed on this subject other than the testimony concerning the use of force memoranda, discussed above in connection with paragraph 9.

The superior court denied the request in paragraph 15.

It is reasonable to believe that the task of assembling the data relating to "all batteries" over a two-year period would be a substantial one. Petitioner has not shown, or even asserted, upon the basis of his counsel's extensive experience with county jail problems, that this information is available in some set of records already compiled. The testimony of the officers who were called as witnesses at the hearing seems to suggest that a search of a variety of records would be required to assemble the data requested. The court has some responsibility not to impose that kind of a

burden without some preliminary showing that it may be useful. (See *Bortin* v. *Superior Court* (1976) 64 Cal.App.3d 873, 878 [135 Cal.Rptr. 30].)

The purpose of petitioner's request, as we understand it from an examination of the papers filed in the superior court and his petition here, is to compare the proportion of prisoners who are prosecuted for battery with the proportion of jailers who are prosecuted "for the same activity." If petitioner has any other use for the information requested in paragraph 15 of his motion, it has not been disclosed to us.[4]

The comparison of numbers which petitioner desires is not the kind of information which would support an inference of invidious discrimination. We may assume that prisoners and jailers constitute distinct classes, as petitioner asserts, but there is a significant difference in the legal standards applicable to them. The sheriff is legally responsible for the operation of the jail (Gov. Code, § 26605) and his deputies, both as jailers and as peace officers, are charged with duties relating to the safekeeping and welfare of prisoners and the protection of county property. In the performance of those duties, they are sometimes required to use physical force, performing acts which would constitute the crime of battery if committed by other persons. The occasions when a prisoner in a county jail may lawfully use physical force against another person are more limited. A comparison of the number of prosecutions brought would tell us nothing about how many should have been brought against the respective members of those unlike classes.

Upon this record we cannot say that the superior court abused its discretion in declining to order that the data requested in paragraph 15 be compiled and furnished.

Let a writ of mandate issue (1) directing the respondent court to make an order (a) requiring production of all statements made by percipient

---

[4]In argument to the trial court on this matter, petitioner's attorney said: "I think by my declaration I have sufficiently alleged the factual basis for securing discovery to show that there is a deliberate policy of selected prosecution that has been instituted by the Sheriff's Department together with the People that is, with respect to the class of inmates they prosecute with respect to the class of officers. [¶] They do not prosecute them all in connection with the same acts and that is batteries visited upon each other; and therefore, Your Honor, I would like to have what I am requesting and that is the information as to the record of batteries that exists in the Sheriff's Department over a course of time, over a period of two years in order to then demonstrate to the court that there is a policy of selective prosecution which I think I am entitled to do and to have under Murgia."

witnesses and witnesses the People intend to call to testify at petitioner's trial, related to the incident in question, including statements furnished to the county counsel, but excluding statements protected by a proper claim of the lawyer-client privilege; and (b) directing the People to identify any person, hospital or other entity which may have records relating to the bodily injuries sustained by Deputy Sheriff Mark McKague on June 15, 1976; and

(2) requiring the respondent court to examine *in camera* the "Certification of Records" tendered by the prosecution on October 19, 1976, and determine whether it is a document which petitioner is entitled to see or contains information which petitioner is entitled to know, and to make such further order as appears proper in the light of that examination.

In other respects the petition is denied.

Kingsley, J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied February 7, 1978, and petitioner's application for a hearing by the Supreme Court was denied March 16, 1978.