[Civ. No. 44563. First Dist., Div. Three. Feb. 26, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO JUDICIAL
DISTRICT OF THE CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Respondent;
LOMIA STREET et al., Real Parties in Interest and Appellants.

740

**COUNSEL**

Cumings, Jordan & Morgan, Cumings & Jordan, Susan B. Jordan, Filippelli & Eisenberg and Gilbert Eisenberg for Real Parties in Interest and Appellants.

Evelle J. Younger, George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

Robert Nicco, Public Defender (San Francisco), Ann S. Kaplan, Ephraim Margolin and Nicholas G. Arguimbau as Amici Curiae.

**OPINION**

**WHITE, P. J.**—Appellants, real parties in interest herein (hereafter referred to as defendants), appeal from a writ of mandate issued by the Superior Court of San Francisco County ordering the municipal court to vacate its discovery order.[1] ██ In this appeal the ultimate question presented is whether the municipal court in the proper exercise of its discretion was required to deny real parties in interests' discovery motion. ██ Although the extraordinary writ of mandamus will issue to

---

[1]We granted the request of the California Attorneys for Criminal Justice and others to file an amicus curiae brief herein. At conference, we determined, to our chagrin, that "others" were five named municipal court judges represented by attorneys for amici

compel a court to exercise its discretion, it may not be used to control a court's discretion unless that discretion could properly be exercised only in one way. (*Harris* v. *Superior Court* (1977) 19 Cal.3d 786, 796 [140 Cal.Rptr. 318, 567 P.2d 750]; *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 925 [132 Cal.Rptr. 405, 553 P.2d 565]; *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 79, 80, pp. 3856- Hereinafter we determine that in properly applying the principles of criminal discovery, the municipal court's order granting discovery was not an abuse of discretion. Therefore, we conclude that the superior court erred in issuing a writ of mandate vacating the municipal court order granting discovery.

Defendants were charged by complaint filed in San Francisco Municipal Court of violating various Penal Code sections relating to prostitution. (Pen. Code, §§ 315—keeping a house of ill-fame; 318—prevailing upon a person to visit a place of prostitution; 647, subd. (b)—soliciting prostitution.) Although the three real parties in interest were not charged as codefendants, their cases were joined for purposes of the instant litigation. Defendants filed a pretrial motion to dismiss the charges filed against them and a supplemental motion for discovery. In their pretrial motion for dismissal and discovery, defendants alleged that trial or conviction on the charges filed against them would violate their constitutional right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution, because the charges were the result of intentional and purposeful discriminatory enforcement of the law. In declarations signed by their attorneys, defendants made a showing to justify their discovery requests, which they alleged would provide information to support their motion to dismiss on constitutional grounds. Defendants' declared belief is that the information is possessed by the District Attorney and/or the Police Department of the City and County of San Francisco.

In summary, the declarations alleged, on information and belief, that the San Francisco District Attorney enforces Penal Code sections 315, 318 and 647, subdivisions (a) and (b) against women who allegedly deal in

CACJ. At oral argument we ruled then as we seek to make clear now that the municipal court is only a nominal party. The individual judges of the court are not party litigants; consequently they have no standing to and do not herein appear, our improvident order notwithstanding.

heterosexual prostitution and related offenses,[2] but not against adult male homosexuals where these violations occur in certain types of homosexual-owned, operated or patronized homosexual commercial establishments or coincident with the operation of male escort services. In support of this general allegation, the declarations allege that this discriminatory enforcement of the pertinent statutes is the result of a policy decision of the San Francisco District Attorney instituted as a result of his election campaign promises to members of the homosexual community and evidenced (1) by the refusal of the district attorney to prosecute three homosexual men arrested for engaging in lewd conduct on January 5, 1978; (2) a meeting between the district attorney, the Chief of the San Francisco Police Department and the owners of homosexual bathhouses in San Francisco shortly after that incident during which it was agreed that there would be no further arrests or investigations into those bathhouses; and (3) an interdepartmental memo from one Captain Eimil of the San Francisco Police Department to his superior(s) dated approximately July or August 1977 confirming that he would not investigate any possible adult violations of law relating to any male escort service in San Francisco.[3] Finally, the declarations allege that all police officers and members of the district attorney's office have been instructed not to speak with defense counsel and/or their investigators regarding this policy, but that the police officers can be subpoenaed and will testify truthfully. The declarations here refer to the records and files of a similar action in the superior court in which a private investigator filed an affidavit to the effect that he could elicit no information from police officers regarding their prostitution arrest policies.

The trial court granted the majority of the requests for discovery, whereupon the People successfully sought a writ of mandate in the superior court directing the municipal court to vacate its order on grounds that the trial court had exceeded its jurisdiction.[4] A stay was granted in the municipal court proceedings pending this appeal.

---

[2]They allege that women homosexuals are similarly prosecuted, although none of the defendants in the instant actions is a homosexual.

[3]Defendants allege that male escort services provide male prostitutes for customers in violation of Penal Code section 647, subdivision (b) and that the escort services encourage sex/lewd conduct in places open to the public in violation of Penal Code section 647, subdivision (b).

[4]Subsequent to the issuance of the writ by the superior court, real parties in interest petitioned this court for its writ reversing the superior court (1 Civil No. 44052). Said petition was denied by this court, as well as a subsequent petition for hearing in the Supreme Court.

■ *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44], established, and the People do not dispute, that a defendant may raise a claim of intentional and purposeful invidious discrimination in the enforcement of all laws, including penal statutes, as grounds for dismissal of a criminal prosecution and that he may obtain a pretrial discovery order requiring the prosecutor to produce information relevant to that claim. The People argue in the instant case, however, that defendants have failed to establish plausible justification for the discovery they seek.

In *Murgia,* the defendants (petitioners), members of the United Farm Workers, filed motions to dismiss on the ground that the prosecutions violated their constitutional rights to equal protection of the law, because, they alleged, Kern County law enforcement authorities engaged in a deliberate, systematic practice of discriminatory enforcement of the criminal law against them. In conjunction with these motions, defendants filed a discovery motion seeking to obtain evidence which they said related to their discriminatory prosecution claim. The trial court found that defendants had established a prima facie case of discriminatory enforcement, but denied the discovery motion because it felt that such discrimination was no defense to a criminal prosecution. In overruling the trial court, the Supreme Court said that the equal protection clause fully applies to all criminal law and so, as in any criminal prosecution, the established principle which entitles the defendant to all relevant and material information which the prosecution possesses which will assist him in the preparation and presentation of his defense is applicable. (15 Cal.3d at p. 293.)

■ In *Murgia,* the court held that a clear allegation of a practice of "intentional, purposeful and unequal enforcement of penal statutes" against a class of individuals was sufficient to support a claim of invidious discrimination. The court distinguished *Oyler* v. *Boles* (1962) 368 U.S. 448 [7 L.Ed.2d 446, 82 S.Ct. 501], where a defendant's contention that a criminal statute had been discriminatorily enforced against him was rejected because he failed to allege that the discrimination was the result of "race, religion or other arbitrary classification." (15 Cal.3d at p. 299.) In California, sex is such an arbitrary classification. (*People* v. *Superior Court (Hartway)* (1977) 19 Cal.3d 338, 348 [138 Cal.Rptr. 66, 562 P.2d 1315].)

■ *Griffin* v. *Municipal Court* (1977) 20 Cal.3d 300, 306 [142 Cal.Rptr. 286, 571 P.2d 997], reaffirmed the *Murgia* holding that when a

defense of discriminatory enforcement is claimed, the defendant's right to discovery should be given effect according to " 'traditional principles of criminal discovery.' " These principles are therefore applicable to the instant case if defendants have properly made such a claim.

Defendants argue that they have demonstrated a plausible justification for the discovery they need to support their claim of invidious discrimination, a proper defense in this case. As heretofore stated, the People advocate that the defendants failed to show plausible justification. They argue for three reasons: (1) the declarations in support of discovery are inadequate; (2) defendants have not shown themselves unable to make a more complete showing; and (3) defendants fail to make a prima facie showing of discriminatory enforcement. The People attack the sufficiency of the defendants' "information and belief" declarations asserting they contain "no indication of any support for the belief." Specifically referring to the described alleged meeting between law enforcement officers and members of the "[homosexual] community," and in Captain Eimil's memorandum, it is contended that defendants' "declarations suggest little but rumors and beliefs . . . with nothing to establish the reasonableness of these beliefs, or the sources of the information." Describing defendants' showing as "weak" and relying upon *Bortin* v. *Superior Court* (1976) 64 Cal.App.3d 873 [135 Cal.Rptr. 30], the People urge that we find the supporting declarations to be "unweighty evidence" which fails to establish a plausible justification for discovery.

*Bortin*, a defendant charged with perjury (Pen. Code, § 118) for allegedly making a material false statement under oath in a driver's license application, sought a dismissal on the grounds of invidious selective prosecution. He alleged on "information and belief" that the perjury charges were motivated entirely because of his and his associates' anti-American foreign and domestic policy political beliefs. Further, he, after investigation, alleged a "belief" that though "thousands" of San Franciscans have been found to have fraudulently obtained licenses, none had been prosecuted under the felony perjury statute. His declaration also made it appear that the State of California through the Department of Motor Vehicles adopted and pursued a policy, with one exception, not to enforce the criminal sanction for such a false statement. Importantly, *Bortin* concluded that without the requested discovery he would not be able to adequately show and sustain his defense of invidious selective prosecution. The *Bortin* court, observing that the prosecution had in effect defaulted in the trial court, remanded to give the People in the interest of justice an opportunity to traverse Bortin's "unweighty

evidence" in an evidentiary hearing. However, before remanding, the court opined that upon the uncontroverted and unobjected showing made by *Bortin* discovery "as a matter of law, . . . should have been allowed." (At p. 879.)

What *Bortin* anticipated has occurred herein; we review a record that reflects vigorous opposition to the motion. However, in our view, *Bortin* does not support the People's position. *Bortin* applied *Murgia* even as we are required to do. Justice Elkington in *Bortin,* at page 878, observed " 'plausible justification' for criminal discovery is readily apparent; but sometimes it is not." When it is not, all that is required is "some 'prima facie' (i.e. 'plausible') showing" to justify the discovery order. "The showing, as indicated, need not be strong, . . ." The fact that the *Bortin* court characterized the defendant's evidentiary showing ("conclusionary and 'information and belief' allegations") "unweighty evidence" (at p. 879) and opined that the trial court in a contested hearing might reasonably have found a lack of " *'plausible justification'* " is inapposite. (Italics added.) Herein, the municipal court found that there was a sufficient showing to require discovery of "any documents, any policies that might be reflected in documents, so that this Court can be assured that justice is being dispensed with an even hand, that is my sole concern." Actually, as pointed out by Presiding Justice Files in *Robinson v. Superior Court* (1978) 76 Cal.App.3d 968, 982 [143 Cal.Rptr. 328], "Upon the record which reached the Supreme Court in *Murgia,* there was no occasion to discuss either the minimum showing which must be made for discovery on the equal protection issue, or the kind of information which need be produced. The holding of the case is that 'traditional principles of criminal discovery mandate that defendants be permitted to discover information relevant to such a claim.' (15 Cal.3d at p. 306.)"[5]

The People's argument that the defendants have not shown themselves unable to make a more complete showing is without merit. Defendants accurately brief that the information sought, like that in *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], is in the prosecution's exclusive possession. (See *Griffin* v. *Municipal Court,*

[5]The People's reliance on *Robinson* v. *Superior Court, supra,* is misplaced. The appellate court declined to find that the superior court abused its discretion in denying discovery of comparative statistics showing the number of prisoners and jailers (legally unlike classes) prosecuted for battery growing out of jail altercations between the same. The court found that such information could not support "an inference of invidious discrimination." (At p. 983.) The court did not base its holding on the fact that attorney for petitioner's supporting declaration contained only one factual statement and several expressions of opinion as contended herein by the People.

*supra,* 20 Cal.3d 300.) "Evidence of discriminatory enforcement usually lies buried in the consciences and files of the law enforcement agencies involved . . . ." (*People* v. *Gray* (1967) 254 Cal.App.2d 256, 266 [63 Cal.Rptr. 211].)

In support of their contention that defendants failed to make a "prima facie" (plausible) showing of discriminatory prosecution, the People point out that defendants' "declarations do not show that they were arrested because of a discriminatory enforcement policy" or as they later conclude, defendants "fail to show that they would not have been arrested *except* for this alleged policy." However, it does not follow that the declarations are totally insufficient. When read in the light of permissible, reasonable inferences, they are sufficient. ■ It is certainly true that *Murgia* v. *Municipal Court, supra,* 15 Cal.3d 286, 298, teaches that in order to establish a defense of discriminatory enforcement a defendant must demonstrate or prove that he has been deliberately singled out for prosecution. Further, if successful, such a defendant as the victim of a discriminatory practice is entitled to a dismissal of the criminal charge, since the prosecution would not have been pursued except for the discriminatory design of the prosecution authorities. However, such a defendant, in demonstrating his entitlement to a discovery order, is not required to meet the standard of proof requisite to the dismissal of a discriminatory prosecution. As the *Murgia* court said: "[I]n the present proceeding, we are not faced with the question of whether defendants' showing is adequate to rebut the presumption that official duty has been properly, and hence constitutionally, exercised (see Evid. Code, §§ 664, 606; *People* v. *Gray, supra,* 254 Cal.App.2d 256, 265): the only issue before us is whether discovery on the discriminatory prosecution claim should have been totally foreclosed. At this stage of the proceedings, it is impossible to determine what evidence defendants will ultimately proffer in support of their claim; the discovery motions before us seek to uncover both direct evidence of purposeful, discriminatory conduct as well as circumstantial evidence which might be relevant in raising an inference of such purposeful invidious discrimination. Under these circumstances, we believe the trial court erred in totally denying discovery with respect to defendants' equal protection claim." (15 Cal.3d at p. 305.)

■ In our view the herein defendants' allegations set forth a *claim* that they have been victims of an intentional and purposeful and therefore unconstitutional, discriminatory enforcement of the statutes in question. When read and viewed in their entirety, including the rational

inferences reasonably drawn therefrom, the declarations "show" that the defendants are prosecuted because they were women and not men, and because the alleged violations took place in their private apartments instead of public bathhouses. Both of the classifications are arbitrary and unjustifiable and, *if* proved, would be sufficient to establish a denial of equal protection. (*Murgia* v. *Municipal Court, supra,* 15 Cal.3d 286, 302.) Defendants made a clear allegation of a purposeful policy of discriminatory enforcement of the law, citing specific if not fully detailed occurrences to support this claim, and their discovery requests were specifically aimed at obtaining information to support those allegations. We find that the showing made is not "unweighty evidence." On the contrary, it is a strong showing of plausible justification for discovery. Denial of defendants' discovery motions would in effect be a denial of their discriminatory enforcement defense, one which has been declared available by the California Supreme Court. (*Griffin* v. *Municipal Court, supra,* 20 Cal.3d 300, 308.)

As the *Griffin* court stated: "Unlike civil discovery, criminal discovery in California is strictly a judicial creation" (20 Cal.3d at p. 306) and the courts have established that the discovery capacity of the defendant is almost an absolute right. (Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) § 14.05, p. 880.) ■ "The basis for requiring pretrial production of material in the hands of the prosecution is the fundamental principle that an accused is entitled to a fair trial." (*Cash* v. *Superior Court* (1959) 53 Cal.2d 72, 75 [346 P.2d 407].) Although the California Supreme Court has not yet established a method of ascertaining whether or not discovery of a given item is necessary to accord defendant a fair trial (Louisell & Wally, Modern Cal. Discovery, *supra,* at p. 885), underlying the rationale of criminal discovery is the principle first stated in *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1] (app. dism. 358 U.S. 646 [3 L.Ed.2d 568, 79 S.Ct. 537], disapproved on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]): "Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, . . ." Justice Traynor wrote: "There remains to be articulated how much the right [to pretrial discovery] encompasses. The defendant must show better cause for discovery 'than a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' A showing, however, that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivi-

leged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense. Moreover, in the absence of a countervailing showing by the prosecution that the information may be used for an improper purpose, *discovery is available not merely in the discretion of the trial court, but as a matter of right.*" (Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U. L.Rev. 228, 244, italics added.)

This broad allowance of discovery granted to criminal defendants has been continuously reaffirmed. In *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 536, the court said: "[I]n contrast to the formal requirements for civil discovery, an accused in a criminal prosecution may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial." A sufficient showing is made by "general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.'" (P. 537.) In *Pitchess,* the defendant was charged with battery. He asserted in a pretrial discovery motion that he intended to establish that he had acted in self-defense, and to that end he sought to discover evidence of the complaining witness' sheriff's deputies' propensity for violence, specifically requesting records of investigations into complaints of official misconduct conducted by a unit of the sheriff's department. The trial court granted discovery and was upheld by the Supreme Court. Defendant had filed affidavits stating that four named individuals had filed complaints against the deputies in question and that defendant needed copies of those complaints to refresh the recollection of the complainants or because the complainants were unavailable for interview. Additionally, the defendant alleged that disciplinary records were necessary as character evidence of the deputies' tendency to violence in support of this theory of self-defense. The court held that the affidavits were clearly sufficient to justify discovery under the applicable standard. (11 Cal.3d 531, 534, 537; see also *Cadena* v. *Superior Court* (1978) 79 Cal.App.3d 212 [146 Cal.Rptr. 390]; *Hill* v. *Superior Court* (1974) 10 Cal.3d 812 [112 Cal.Rptr. 257, 518 P.2d 1353].)

■ Discovery is denied where information sought is privileged (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531), where it represents the work product of the prosecution (*People* v. *Boehm* (1969) 270 Cal.App.2d 13 [75 Cal.Rptr. 590]), where it has no relevance to the defense (*Hinojosa* v. *Superior Court* (1976) 55 Cal.App.3d 692 [127 Cal.Rptr. 664]), and where it is requested with such lack of specificity that it appears to be

little more than a fishing expedition (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]). ▇ The discovery requests granted in the instant case do not fall into any of the above categories. They specifically relate to the defense of discriminatory enforcement, seeking statistical information regarding the number of arrests, prosecutions or investigations of sexual acts or solicitations therefor between adults in homosexual bathhouses and/or relating to male escort services and any statements or interdepartmental memoranda which may exist regarding a policy, vis-á-vis the specified homosexual bathhouses and male escort services in the district attorney's office or the San Francisco Police Department and the reasons therefor. (The court properly disallowed discovery into campaign promises of the district attorney on grounds that it was irrelevant.)

The municipal court properly applied the principles of criminal discovery to the instant case where defendants claimed the recognized defense of discriminatory enforcement, and granting discovery was not an abuse of discretion. The learned superior court therefore erred in issuing a writ of mandate vacating the municipal court order.

The superior court's order granting a writ of mandate is vacated. We direct that the order of the municipal court granting discovery be reinstated.

Scott, J., and Feinberg, J., concurred.

A petition for a rehearing was denied March 27, 1979, and the petition of the plaintiff and respondent for a hearing by the Supreme Court was denied April 26, 1979.