Filed 9/10/13  P. v. Bursey CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>KEITH BURSEY,<br><br>      Defendant and Appellant. | B242598<br><br>(Los Angeles County<br>Super. Ct. No. BA391622)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

      IT IS ORDERED that the opinion filed herein on August 22, 2013 be modified in the following particulars:

      On page 1, in the first line under the case title, add the name "Dennis J. Landin" as judge, so the first and second lines under the case title now read:  APPEAL from a judgment of the Superior Court of Los Angeles County.  Dennis J. Landin and Sam Ohta, Judges.  Conditionally reversed and remanded with directions.

      On page 5, in the first sentence of the fourth full paragraph, after the words "The trial court," add "(Judge Dennis J. Landin)", so the sentence now reads:  The trial court (Judge Dennis J. Landin) denied Bursey's *Pitchess* motion, finding, "[t]here's not a plausible factual scenario that would warrant the in-camera review of personnel records."

On page 5, at the beginning of the fifth full paragraph, immediately under the heading "**Verdicts and Sentencing**," add the following sentence:  The matter was tried before Judge Sam Ohta.

This modification does not result in a change in the judgment.

NOT TO BE PUBLISHED.

_____
MALLANO, P. J.             ROTHSCHILD, J.             CHANEY, J.

Filed 8/22/13  P. v. Bursey CA2/1 (unmodifed version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEITH BURSEY,<br><br>    Defendant and Appellant. | B242598<br><br>(Los Angeles County<br>Super. Ct. No. BA391622) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Sam Ohta, Judge.  Conditionally reversed and remanded with directions.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Keith Bursey appeals from a judgment entered after a jury found him guilty of possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1)),[1] and carrying a loaded handgun (former § 12031, subd. (a)(1)). After Bursey admitted prior conviction allegations, the trial court sentenced him to five years in prison.

Bursey contends the trial court abused its discretion in denying his *Pitchess*[2] motion in its entirety. He argues he established good cause for the discovery of personnel records of three Los Angeles Police Department (LAPD) officers relating to falsified police reports, dishonesty and planting evidence.[3] We agree with Bursey's arguments, and therefore conditionally reverse the judgment for an in camera hearing on Bursey's *Pitchess* motion.

**BACKGROUND**

**Police Report**

LAPD Officer Algren prepared the police report attached to Bursey's *Pitchess* motion. According to the report, on December 7, 2011, Officers Algren, Escamilla and Malik were on patrol in an unmarked vehicle in an area claimed by the Rolling 60's criminal street gang. At about 5:50 p.m., the officers drove by several people who were standing in front of a residence that was known as "an active gang location where Rolling 60 gang members trespass, congregate and sell narcotics." As the officers drove southbound, one of those people (not Bursey) "nervously looked at" the officers "and then quickly walked northbound away from the location." Officer Algren, who was driving, stopped the police vehicle and the officers exited and began "to investigate."

Officer Malik approached the man who had walked away from the residence. According to the police report, the man told Officer Malik "he did not want to be seen or

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[3] Bursey also sought discovery of records relating to numerous other types of misconduct by the officers, but he does not challenge the denial of his *Pitchess* motion with respect to those other categories of records.

stopped with the gang members who were standing in front of the location." Officer Escamilla approached and spoke with another man who was known to Officer Algren "as an active Rolling 60 gang member currently on parole."

Officer Algren approached Bursey, "who was standing on the sidewalk embracing his girlfriend." Bursey was four to five feet away from a "very distinctive red Chevrolet Blazer." Officer Algren asked Bursey if the Blazer belonged to him. Bursey looked at the Blazer and responded, "no." Bursey informed the officer he was on parole.

Officers Algren and Malik "spoke with multiple residents in the area to determine if [Bursey] and the others were trespassing, loitering or if they lived at any of the residences in the area." A woman who lived on the street where the suspects were standing told Officer Algren that one of the suspects (the man Officer Algren identified in his report as "an active Rolling 60 gang member") "used to live several houses down from her residence." The same woman "told Officer Malik that she has seen Bursey before and that the red truck in front of her house belonged to him."

Officer Algren stated in the police report that he "inspected the red Blazer and observed the end of a possible pistol grip protruding from beneath the right front passenger seat." Officer Algren then "opened the right front passenger door and observed a full size blue steel pistol (Springfield Armory, 9mm, 4" barrel) lying beneath the right front passenger seat." In the glove compartment, Officer Algren found several documents with Bursey's name and address on them. Officer Algren searched Bursey's pants pockets and found a set of keys with a remote control that unlocked the Blazer. Bursey then told Officer Algren the vehicle belonged to him.

Officer Algren recovered the firearm from the Blazer and unloaded it. As stated in the police report: "The firearm was loaded with (10) live 9mm handgun cartridges. It appeared to be operable and in good working order." Officer Malik later "conducted an automated query" and determined the firearm was unregistered.

Bursey was arrested for being a felon in possession of a firearm. The other two men "were released at [the] scene." The man who had walked away from the location when the officers drove by stated he did not have any information about Bursey or the red

3

Blazer. The other man stated a friend had driven him to the location, and Bursey and the red Blazer were already there when he arrived.

The police report states Bursey "is an admitted Rolling 60 gang member with multiple gang tattoos all over his body."

**Pitchess Motion**

A March 16, 2012 information charged Bursey with possession of a firearm by a felon and carrying a loaded handgun.

On April 2, 2012, Bursey filed his *Pitchess* motion, seeking complaints and other police personnel records concerning LAPD Officers Algren, Escamilla and Malik, relating to numerous categories of misconduct, including falsified police reports, dishonesty and planting evidence. Bursey attached his police report to his motion. Defense counsel's declaration in support of the *Pitchess* motion states, in pertinent part:

"Defense is informed and believes that the officers have falsified their report and that there was no way the officers could see any pistol protruding from under the seat. First, the vehicle had an extremely dark tint on its side windows making it impossible to view the interior of the vehicle at that hour of the evening.[4] Second, there was no gun in the vehicle. The gun may have been planted by the officers in order to frame the defendant.

"Thus, the fictitious account of the officers' observations and statements made in the arrest report are a clear falsification contained in the officers' report. Defense counsel contends that the officers falsified their report in order [to] have the defendant improperly

---

4 At the March 2, 2012 preliminary hearing in this matter, Officer Malik testified that Officer Algren looked through the window of the Blazer, turned and mouthed the word "gun" to Officer Malik, opened the passenger side door of the Blazer and thereafter recovered the firearm from the Blazer.

At trial, Officer Malik testified he saw Officer Algren look into the front passenger side window of the Blazer. Officer Escamilla testified at trial that he saw Officer Algren look inside the Blazer while standing outside the passenger side of the vehicle. Officer Algren testified at trial that he could not recall whether he looked into the Blazer through the passenger door window or the windshield. Officer Algren recalled that the windows of the Blazer were tinted, but testified that he was able to see through the tint.

4

charged for felony firearm possession and carrying an unregistered firearm." (Bold and italicized font omitted.)

After summarizing the information in the police report, Bursey explained he sought records relating to all three officers who were present when he was arrested because each of them "played a part in making the arrest" and was engaged in the misconduct.

In written opposition to the *Pitchess* motion, the LAPD argued defense counsel's "declaration is nothing but a denial of the officer's report" and "therefore is insufficient to support a finding of 'good cause' to compel review of private documents [police personnel records]." (Bold font omitted.) The LAPD asserted the trial court should deny Bursey's motion because defense counsel's declaration lacked specificity and did not present an "alternate" factual scenario of what occurred at the time of the arrest. (Bold font omitted.)

At the April 27, 2012 hearing on Bursey's *Pitchess* motion, defense counsel reiterated Bursey's position that the officers falsified the police report and planted evidence (the handgun). Defense counsel argued the officers could not have looked into the window of Bursey's vehicle and seen a handgun, as reported, because (1) it was dark outside and the windows of the vehicle were tinted and (2) there was no handgun in the vehicle.

The trial court denied Bursey's *Pitchess* motion, finding, "[t]here's not a plausible factual scenario that would warrant the in-camera review of personnel records." The court commented: "[T]here's no explanation, no plausible reason why the officer would li[e] about that. Why would the police?"

**Verdicts and Sentencing**

After hearing testimony from Officers Malik, Escamilla and Algren, and Bursey's stipulation that he had a prior felony conviction, the jury found Bursey guilty of possession of a firearm by a felon (count 1) and carrying a loaded handgun (count 2).

Bursey admitted the allegation in the information that he had sustained one prior felony conviction which qualified as a serious or violent felony within the meaning of the

5

"Three Strikes" law. (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d).) He also admitted the allegation that he had sustained a prior conviction and had served a term within the meaning of section 667.5, subdivision (b).

After denying Bursey's motion to dismiss the prior strike, the trial court sentenced Bursey to five years in prison: the middle term of two years on count 1, doubled to four years under the Three Strikes law, plus one year for the enhancement under section 667.5, subdivision (b). The court imposed and stayed a four-year sentence on count 2.

### DISCUSSION

Bursey contends the trial court erred in denying his *Pitchess* motion with respect to personnel records of Officers Algren, Escamilla and Malik relating to falsified police reports, dishonesty and planting evidence. He requests that we order the trial court to conduct an in camera review of such records.

Under Evidence Code section 1043, a motion seeking discovery of police personnel records (a *Pitchess* motion) must include, among other things, "[a] description of the type of records or information sought" and "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records." (Evid. Code, § 1043, subd. (b)(2), (3); *City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1142-1143.) "The statutory scheme carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense." (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53.)

In *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, our Supreme Court clarified the good-cause requirement for discovery of police personnel records. In addition to a specific description of the discovery sought and a demonstration of a logical link between the defense proposed and the pending charge, to satisfy "the first part of the good cause requirement" and establish "the materiality to the pending litigation of the discovery

6

sought," the "defendant need only demonstrate that the scenario of alleged officer misconduct could or might have occurred." (*Id*. at pp. 1016, 1021.) To make this showing, the defendant must present "a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents," such as the police report. (*Id*. at p. 1025.) "That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Id*. at pp. 1024-1025.) To be plausible, the scenario must include "an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id*. at p. 1026.)

The Supreme Court recognized the good cause requirement "is a 'relatively low threshold for discovery.' [Citation.]" (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at p. 1019.) In ruling on a *Pitchess* motion, the trial court does not evaluate the credibility, believability or persuasiveness of the defendant's factual scenario. (*Id*. at p. 1026.) "A *Pitchess* motion need not . . . provide a motive for the alleged officer misconduct." (*Id*. at p. 1025.)

We review a trial court's ruling on a *Pitchess* motion for abuse of discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

In his *Pitchess* motion, Bursey presented the following factual scenario through his counsel's declaration, read in conjunction with the police report: Officers Algren, Escamilla and Malik contacted three men who were standing outside a known gang hangout where narcotics had been sold in the past. Bursey informed an officer he was on parole. Officer Algren recognized one of the other men as an active gang member who was on parole. While the men were detained, the officers spoke to residents in the area to determine if the men were engaged in any criminal behavior. Apparently, none of the residents reported any criminal behavior. The police report does not cite evidence of narcotics sales.

One of the residents told an officer a vehicle in the area belonged to Bursey. Bursey had previously denied the vehicle was his when Officer Algren asked about it. Officer Algren looked into the vehicle, opened the front passenger side door and searched

7

the vehicle. Bursey subsequently admitted the vehicle was his after Officer Algren found a set of keys in Bursey's pants pocket with a remote control which unlocked the vehicle.

Officer Algren reported that when he looked into the vehicle he saw the end of the grip of a firearm sticking out from underneath the front passenger seat. He thereafter recovered the firearm from the vehicle.

The defense presented in Bursey's *Pitchess* motion is that the officers planted the firearm in Bursey's vehicle and falsified the police report to cover it up. Defense counsel's declaration states there was no firearm in Bursey's vehicle and Officer Algren could not have seen the end of a grip of a firearm by looking through a side window of the vehicle as he stated in the police report. It was dark outside at the time Officer Algren looked into the vehicle (after 5:50 p.m. on a December evening) and the windows of the vehicle were tinted with "an extremely dark tint."[5] (Bold font omitted.)

We find Bursey satisfied the prerequisites set forth in Evidence Code section 1043 and made a showing of good cause for discovery of relevant information in the personnel files of Officers Algren, Escamilla and Malik regarding prior complaints of falsified police reports, dishonesty and planting evidence. In his *Pitchess* motion, Bursey presented a specific factual scenario of officer misconduct which supports the defense proposed to the charges and could or might have occurred—the officers planted the firearm and then falsified the police report to cover it up. Officer Algren reported he looked into the vehicle and saw the firearm. According to defense counsel's declaration, Officer Algren could not have seen a firearm in the vehicle because (1) there was no firearm in the vehicle and (2) it was dark outside and the window Officer Algren looked through had a dark tint.

---

[5] At trial, the defense introduced a photograph of Bursey's vehicle which was received in evidence. Officer Algren testified that "in the photograph the windows are so dark that it looks like you can't even see through it" due to the tinting. Officer Algren denied the photograph accurately depicted the tint as it appeared on December 7, 2011, and maintained he was able to look through the window and see the firearm sticking out from underneath the front passenger seat.

8

The Attorney General argues Bursey did not show good cause for discovery of any police personnel records because the factual scenario Bursey presented in his *Pitchess* motion did not "explain whether he was outside the nearby residence, and if so what he was doing there. He also failed to state whether the vehicle belonged to him." As discussed above, a defendant must present "a specific factual scenario of officer misconduct that is plausible *when read in light of the pertinent documents,*" such as the police report. (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at p. 1025, italics added.) As set forth in defense counsel's declaration in support of Bursey's *Pitchess* motion, the police report states Bursey was standing outside a particular residence and that Bursey eventually admitted the vehicle Officer Algren searched belonged to him. Bursey does not dispute these facts from the police report.

The Attorney General cites *People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318 in support of its argument Bursey did not show good cause because his factual scenario did not explain what he was doing outside the residence prior to and at the time of his arrest. In that case, the police reported the defendant sold narcotics to an undercover officer as several other police officers watched the transaction. (*Id.* at pp. 1315, 1317.) In his *Pitchess* motion, the defendant denied involvement in the narcotics transaction and asserted the police arrested him because he was in an area where the police were making other arrests for drug sales. (*Id.* at p. 1317.) The Court of Appeal found the defendant did not show good cause for discovery of police personnel records regarding dishonesty, planting evidence and other misconduct because the factual scenario he presented did not explain why he was in an area where drugs were being sold or what he was doing prior to his arrest which led to his "being singled out by the police." (*Id.* at pp. 1317, 1318.)

In this case, the police report states Bursey and two other men were standing in front of a residence that was known as "an active gang location where Rolling 60 gang members trespass, congregate and sell narcotics." Bursey was hugging his girlfriend when the officers arrived. The officers conducted an investigation but did not uncover evidence that the men were engaged in criminal conduct (e.g., narcotics sales). There is

9

no reported connection between the location where Bursey was standing and the firearm that was found in his vehicle. The sufficiency of Bursey's factual scenario does not depend upon him explaining why he was standing outside the residence or what he was doing just prior to the officers' arrival.

The Attorney General also argues "the records for Officers Escamilla and Malik are irrelevant because these officers were not involved in searching appellant's vehicle or documenting that search." As stated above, we find Bursey showed good cause for discovery of the personnel records of all three officers regarding prior complaints of falsified police reports, dishonesty and planting evidence. Courts have allowed discovery of personnel records as to all officers who were "directly involved in the fracas" (*Hinojosa v. Superior Court* (1976) 55 Cal.App.3d 692, 697), who "acted in concert" with the arresting officer (*Dell M. v. Superior Court* (1977) 70 Cal.App.3d 782, 787), or who were present and witnessed the fracas (*Kelvin L. v. Superior Court* (1976) 62 Cal.App.3d 823, 828-829). Officers Escamilla and Malik drove to the scene in the same patrol car as Officer Algren. They worked together with Officer Algren to investigate the activities of Bursey and the other two men. Officers Escamilla and Malik were present and witnessed the search of Bursey's vehicle. The police report demonstrates Officers Escamilla and Malik were directly involved in the events leading up to Bursey's arrest and they acted in concert with Officer Algren.

We remand the matter for an in camera hearing during which the trial court shall examine any personnel records of Officers Algren, Escamilla and Malik relating to falsified police reports, dishonesty and planting evidence, and disclose to Bursey "information [that] is relevant to the subject matter involved in the pending litigation," but does not fall within the statutory exceptions and limitations. (Evid. Code, § 1045, subd. (a); *People v. Mooc* (2001) 26 Cal.4th 1216, 1226-1227.) In the event the trial court discloses information to Bursey, the court shall allow Bursey an opportunity to demonstrate prejudice and shall order a new trial if there is a reasonable probability that the outcome would have been different had the information been disclosed. If, after a

10

reasonable time, Bursey has failed to demonstrate prejudice, the court shall reinstate the judgment. (*People v. Hustead* (1999) 74 Cal.App.4th 410, 419, 422-423.)

## DISPOSITION

The judgment is conditionally reversed and the cause remanded with directions to the trial court to conduct an in camera hearing on Bursey's discovery motion with respect to personnel records of Officers Algren, Escamilla and Malik relating to falsified police reports, dishonesty and planting evidence, and to make a record in accordance with the procedures set forth in *People v. Mooc*, *supra*, 26 Cal.4th at pages 1228-1230. If the hearing reveals no discoverable information, the trial court shall reinstate the original judgment. If the in camera hearing reveals discoverable information, the trial court shall grant discovery, allow Bursey an opportunity to demonstrate prejudice, and order a new trial if prejudice is demonstrated. If prejudice is not demonstrated, the trial court shall reinstate the original judgment.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


MALLANO, P. J.


ROTHSCHILD, J.


11