[Crim. No. 11775. Fourth Dist., Div. One. July 17, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MICHAEL CASTAIN, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Victoria Sleeth, Deputy State Public Defender, and Geraldine Mele for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield, John W. Carney and Lillian L. Quon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROWN (Gerald), P. J.—A jury convicted David Michael Castain of battery on a police officer (Pen. Code, §§ 242, 243) and resisting arrest

(Pen. Code, § 148). He appeals the judgment (order granting probation).

At about 6:30 p.m. on November 12, 1978, San Diego Police Officer Robert Revak was patrolling in a marked police car. Two men in the front seat of a parked car slouched down as he drove past. This behavior aroused Revak's suspicions, and he decided to investigate. He walked up to the parked car and asked the two men for identification. Castain, who was sitting in the driver's seat, produced a California driver's license. Revak shined his flashlight into the car; on the front seat he saw 15 to 20 plastic bags containing white powder which he believed to be narcotics. He also noticed several baggies in Castain's shirt pocket. He reached into the car and grabbed the baggies from Castain's pocket. Castain grabbed the baggies back and threw them on the floor. Revak then ordered Castain to get out of the car. When Castain did not comply, Revak opened the door and attempted to pull Castain from the car. Castain resisted, but Revak eventually succeeded in getting him out of the car. Outside the car, Castain continued to resist, striking Revak, who tried to place him in a "sleeper" or "choke-out" hold. The two men struggled, falling to the ground; Castain tried to get Revak's gun. During the fight, Castain shouted to his companion, Omar Hassan, "Omar, take this shit and get out of here." Hassan left. The struggle ended when two other officers arrived.

Castain testified he did not grab any baggie back after Revak had snatched one from his shirt pocket. He got out of the car when Revak ordered him to. Once he was outside the car, Revak grabbed Castain's wrists, pulled his arms behind his back, choked him, and threw him against the side of the car. As Revak began dragging Castain backwards into the street, Castain asked him, "Why are you messing with me? What are you doing? You don't know me. Just leave me alone." When they reached the opposite side of the street, Revak tripped and fell, pulling Castain to the ground with him. Fearful Revak would renew his assault, Castain struggled with him, attempting to pin him to the ground. As Revak was getting up after the fight had ended, he threatened Castain, saying, "You're going to be dead by morning." He repeated the threat while driving Castain to the police station. The only other witness to the beginning of the confrontation between Castain and Revak was Castain's companion, Hassan; his testimony generally corroborated Castain's.

After Castain's arrest, the officers thoroughly searched the car but found no baggies, no white powder, and no narcotics or drug paraphernalia.

At trial, Castain contended he could not be convicted of violating sections 148 and 243—both of which require the officer to be engaged in the performance of his duties—because Revak had used excessive force and consequently was not acting within the scope of his duties. In support of this contention, Castain sought to introduce testimony from two other individuals, Barry Knott and James Murray, who claimed Revak had used excessive force on other occasions. This testimony was relevant and admissible as circumstantial evidence of Revak's conduct on the evening in question (*Hinojosa v. Superior Court* (1976) 55 Cal. App.3d 692, 696 [127 Cal.Rptr. 664]; Evid. Code, § 1103). However, on objection by the prosecutor, the court exercised its discretion under Evidence Code section 352 and excluded Murray's testimony.

According to the offer of proof, Murray would have testified: In August 1978 Revak stopped a car in which he was a passenger; after completing field sobriety test, the driver (who was drunk) smiled, and Revak "grabbed him, choked him, pulled the hair out of his head, jammed him against the window several times, arrested all the occupants of the vehicle"; on the way to the police station, Revak exchanged taunts and threats with them, and someone spat at him; Revak stopped the car, pulled out the driver, "bashed him against the rear of the vehicle, struck him several times, pushed him down to the ground." The trial court concluded Murray's testimony had only slight probative value, and admission of his testimony might lead to a "minitrial" of the facts of that incident, with the attendant dangers of confusing the issues, misleading the jury, and undue consumption of time. Castain contends the court abused its discretion in excluding Murray's testimony.

Section 352 of the Evidence Code gives the court discretion to exclude relevant and otherwise admissible evidence "if its probative value is *substantially* outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create *substantial* danger of undue prejudice, of confusing the issues, or of misleading the jury." (Italics added.) Here, in contending Murray's testimony had little probative value, the People, like the trial court, emphasize the factual dissimilarities between the incident Murray witnessed and the Castain-Revak incident. This emphasis is misplaced. ■ The true

test of the probative value of evidence of this sort is not the degree of similarity between the two incidents but the extent to which the offered evidence tends to show the officer has used excessive force on another occasion.

Viewed in this light, Murray's testimony, if heard and believed by the jury, would have been highly probative of the point it was offered to prove: Revak had a propensity to use excessive force against citizens he arrested or detained and, by inference, had acted "in character" in his confrontation with Castain. Moreover, the probative value of the offered evidence extends beyond its tendency to show Revak used excessive force on that particular occasion; it also tends to show a pattern of behavior reflecting a character trait of violence. A jury, hearing evidence of only one other violent confrontation involving the officer, might conclude it was an isolated aberration. It would be much less likely to reach that conclusion if it had heard evidence of two such incidents. Finally, the evidence did not involve a collateral matter, as the trial court seemed to believe. Murray's testimony was circumstantial evidence relevant to a crucial factual issue: whether Revak used excessive force against Castain.

When weighed against its substantial probative value, the admission of Murray's testimony presented relatively little danger of confusing or misleading the jury, or of undue delay. While the trial court was properly concerned about the possibility of a "minitrial" which would distract the jury from the issues of the case, any danger could easily have been avoided by a cautionary instruction explaining the purpose for which Murray's testimony was being admitted. The trial court's concern about undue consumption of time was similarly misplaced. Although neither side gave the court an estimate of time, the offer of proof itself showed the testimony about the incident would likely be brief, for Murray would be testifying about a single incident, not a long, complicated series of events. Moreover, the court knew the testimony of Knott and Murray was the only evidence the defense planned to offer to show Revak had used excessive force on other occasions; the defense did not have 10 or 20 witnesses waiting in the wings to testify to similar incidents. In opposing admission of Murray's testimony, the prosecutor told the court a delay might be necessary to enable the People to locate a witness or witnesses to rebut Murray. However, the prosecution knew the incident had been disclosed to the defense seven months earlier and had had ample time to prepare to rebut testimony about it. The defendant should not be penalized for the prosecution's failure to do so.

In view of the evidence's substantial probative value and the relatively slight danger of confusion and undue delay, the trial court abused its discretion in excluding Murray's testimony. The error was prejudicial. The evidence was relevant to a crucial element of Castain's defense—his claim of excessive force by Revak—on which the evidence was closely balanced. Under the circumstances, it is reasonably probable the result would have been more favorable to Castain if Murray's testimony had been admitted (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), and the judgment must be reversed.

Because the judgment must be reversed, it is not necessary to address all the remaining contentions raised by Castain; however, we address several issues which are likely to arise if the case is retried.

Before trial, Castain sought discovery of information about past complaints of excessive force by Revak. In an *in camera* proceeding from which the prosecutor, the defendant, and defense counsel were excluded, the trial court examined the police department files on four such complaints. The court ordered disclosure of information about two of the complaints (the incidents involving Knott and Murray) but concluded the remaining two files contained no information relevant to the present case. On Castain's request (unopposed by the People), this court has conducted a second *in camera* examination of the files on the two complaints which were not disclosed to the defense.

█ In a prosecution for battery on a police officer or resisting arrest, evidence of the officer's tendency to violence, including evidence of specific instances of violent conduct, is relevant and admissible (*Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 163 [143 Cal.Rptr. 450]; Evid. Code, § 1103). Evidence Code section 1045 authorizes discovery of information about complaints against a police officer as long as the information is "relevant to the subject matter involved in the pending litigation." However, the court may not order disclosure of any information about incidents occurring more than five years before the events involved in the pending litigation, or of any facts "which are so remote as to make disclosure of little or no practical benefit" (Evid. Code, § 1045, subd. (b).) Here, as the People acknowledge, information about complaints of excessive force by Revak, within the five years before Castain's arrest, are relevant and discoverable.

Applying these standards, we conclude the trial court erred in finding complaint No. 4439-10/77 irrelevant. In the event of a retrial, the

name and address of the complainant and the date and location of the incident shall be disclosed to the defense. The court correctly denied disclosure of information about complaint No. 5506-8/78.

■ On retrial, the court should give CALJIC No. 9.58 (1980 revision) to inform the jury an officer who uses excessive force in making an arrest is not engaged in the performance of his duties (*People* v. *White* (1980) 101 Cal.App.3d 161, 167 [161 Cal.Rptr. 541]). The jury should also be told it may not find the defendant guilty of either offense—battery on a police officer or resisting arrest—if it finds the arrest or detention was unlawful (*id.* at pp. 166-167). On request, the jury should also be instructed the People have the burden of proving the arrest's lawfulness beyond a reasonable doubt (*People* v. *Roberts* (1967) 256 Cal.App.2d 488, 492-493 [64 Cal.Rptr. 70]). Although the court need not tell the jury a citizen has a right to question a police officer's authority, the court should give CALJIC No. 9.54 in its entirety, including the reference to an arresting officer's obligation, if asked, to tell an arrestee why he is being arrested.

If on retrial Castain again chooses not to have the jury instructed on the lesser included offense of simple battery (Pen. Code, § 242), only the first sentence of CALJIC No. 9.57[1] should be given. This is because the reasonableness of the defendant's response to the officer's excessive force is relevant only where the jury is asked to decide whether the defendant is guilty of simple battery; even if the officer is not acting within the scope of his duties because of his use of excessive force, the defendant may still be guilty of simple battery if he responds with excessive force. However, where—as here—the jury's choices are limited to deciding guilt or innocence of battery on a police officer and resisting arrest, both of which require the officer to be engaged in the performance of his duties, the jury must acquit if it finds the officer used excessive force, and the reasonableness of the defendant's response is irrelevant (*People* v. *White, supra*, 101 Cal.App.3d 161, 167-168).

---

[1]CALJIC No. 9.57, as given to the jury, reads: "A peace officer is not permitted to use unreasonable or excessive force in making an otherwise lawful arrest or attempting to detain a person for questioning.

"If an officer does use unreasonable or excessive force in making an arrest or attempting to detain a person for questioning, the person being arrested or detained may lawfully use reasonable force to protect himself.

"Thus, if you find that the officer used unreasonable or excessive force in making the arrest or detention, and the defendant used only reasonable force to protect himself, the defendant is not guilty of the offense charged in Count One."

We shall not dwell on the prosecutor's obvious misconduct in arguing to the jury the evidence showed only one other incident where Revak allegedly had used excessive force, after the prosecutor himself had successfully urged exclusion of Murray's testimony about a second incident.

The judgment is reversed.

Cologne, J., and Work, J., concurred.

A petition for a rehearing was denied July 30, 1981, and respondent's petition for a hearing by the Supreme Court was denied October 22, 1981.