Filed 7/30/14  P. v. Salcido CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055709 |
| v. | (Super.Ct.No. INF062246) |
| FRANCISCO SALCIDO, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Johnson, Judge.  (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part; reversed in part with directions.

Dacia A. Burz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina, Christine Levingston Bergman, and Ryan H. Peeck, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Francisco Salcido, a West Drive Locos (WDL) gang member, was a passenger in a car that was driving in the gang's territory in Desert Hot Springs. Former[1] Desert Hot Springs Police Sergeant Robert Ritchie followed the car thinking that defendant's fellow gang member, Anthony Paez, was in the car. Just a few days before, Paez had been involved in a shootout with law enforcement officers. The car pulled to the curb. Ritchie got out of his car, had his gun drawn, and was crouched behind his car door anticipating the exiting passenger to be Paez. Defendant exited the vehicle with his back to Ritchie and the car drove away. Ritchie relaxed when he realized it was not Paez. Defendant walked a few steps away from Ritchie, then suddenly turned and shot at Ritchie. Ritchie shot back at defendant until his magazine was empty. Defendant fled the scene. Defendant was apprehended several days later.

After two trials, defendant was convicted of attempted premeditated, willful, and deliberate first degree murder of a peace officer, assault with a deadly weapon on a peace officer, active participation in a street gang, and carrying a loaded firearm while an active member of a street gang.

Defendant now contends on appeal as follows:

1. The trial court abused its discretion and violated his federal constitutional rights to due process when it excluded evidence pursuant to Evidence Code section 352 that Ritchie had been involved in another officer-involved shooting, because it showed he had a character to overreact and use excessive force in high-risk felony situations.

---

[1] Ritchie was medically retired in November 2009.

2

2.     The trial court abused its discretion by allowing "testimonial hearsay" to support the gang expert's opinion that the motive for the murder was that WDL gang members hated Desert Hot Springs police officers.

3.     His conviction of being an active member of a street gang under section 186.22, subdivision (a) should be reversed.

4.     Cumulative error warrants reversal.

We reverse defendant's conviction of violating section 186.22, subdivision (a). We otherwise affirm the judgment in its entirety.

I

PROCEDURAL BACKGROUND

On April 19, 2011, after a first trial, defendant was found guilty of unlawfully carrying a loaded firearm while an active gang member (Pen. Code, § 12031, subd. (a)(2)(c); count 2)[2] and unlawfully participating in a criminal street gang (§ 186.22, subd. (a)); count 3). On October 13, 2011, after a second trial, defendant was found guilty of premeditated, deliberate, and willful attempted murder on a peace officer (§§ 664/187, subd. (a); count 1), and assault with a deadly weapon on a peace officer (§ 245, subd. (d)(1); count 4).[3] The jury also found true the special allegations as to counts 1 and 4, that defendant personally used a firearm (§ 12022.5, subd. (a)), and he personally discharged a firearm (§ 12022.53, subd. (c)). The jury also found true that in the

---

**2**     All further statutory references are to the Penal Code unless otherwise indicated.

**3**     The jury in the first trial had been unable to reach a verdict on counts 1 and 4.

3

commission of count 1, defendant committed the crime for the benefit of or at the direction of a criminal street gang (§ 186.22, subd. (b)(1)).

Defendant, after waiving his rights to a trial, admitted he had suffered one prior serious or violent prior felony conviction (§§ 667, subds. (c) & (e), 1170.12, subd. (c)(1)). Defendant was sentenced to a total prison term of 56 years to life.

II

FACTUAL BACKGROUND

We note at the outset that both parties in providing their Statements of Facts only relied upon the evidence presented at the second trial. Although not discussed by either party, as set forth in the procedural background, *ante*, defendant was found guilty of counts 2 and 3 in the first trial. We deem defendant's omission of the evidence from the first trial in his opening brief as a concession that his arguments only apply to reversal of counts 1 and 4. We draw the factual background from the evidence presented at the second trial. We will discuss, *post*, the issue and facts raised in the supplemental brief pertaining to defendant's claim that count 3 should be reversed.

A. *Prosecution*

1. *The shooting*

On May 26, 2008, Ritchie attended a morning briefing at the police station. He was informed at the briefing that an officer-involved shooting had occurred on Friday, May 23. The suspect in the shooting was a WDL gang member named Anthony Paez. Paez had shot at California Highway Patrol officers. Ritchie had been involved in two

4

other incidents with Paez. During the first incident Paez ran from Ritchie, and in the second incident, Paez had been in possession of a shotgun.

Around 3:00 p.m., Ritchie was on patrol in the area of Third Street in Desert Hot Springs. He was in full uniform and was driving a marked patrol car. His service weapon was a nine-millimeter firearm that he had loaded in the morning. As he was driving on Third Street, he observed a dark blue BMW. He recognized the car as one that he had seen Paez driving during a previous contact.

Ritchie requested a records check of the car while he followed it. There was a female driver and male passenger. The male passenger was moving around in his seat and then sat low in the seat. The passenger had a bald head which was consistent with Paez.

Ritchie confirmed the BMW was the same one Paez had previously been seen driving. He followed the car and radioed for additional units because he believed that Paez was armed and dangerous. Ritchie did not immediately activate his lights and siren because he did not want to stop the car without assistance. He radioed to other units that they should come with lights and sirens activated.

Suddenly, the car stopped near First and Cactus Streets. Ritchie stopped his car in the middle of the road and got out of his car. Ritchie stood behind the open driver's side door of his car and pulled out his gun. He pointed his weapon at the passenger's side door of the BMW but did not issue any commands.

5

Defendant exited the passenger's side door. Ritchie immediately recognized it was not Paez in the car. He contacted police dispatch to advise the other responding officers that it was not Paez in the car. Ritchie relaxed but continued to train his weapon at the BMW. He dropped his gun two to three inches. Ritchie gave no commands to defendant because he had nothing to say to him. He also was talking to dispatch and did not have time to issue commands.

Defendant faced away from Ritchie and his hands were not visible. Initially, Ritchie did not see a gun. Defendant closed the passenger's side door and the BMW drove away. Ritchie was going to wait for other units to arrive and then detain defendant.

Defendant walked three to four steps. He suddenly turned to his left and fired first at Ritchie. Defendant continued to shoot. Ritchie shot back at defendant and emptied his entire magazine; his full magazine contained 17 bullets. Ritchie described the incident as a "full on gun battle." Ritchie crouched behind his car door. Bullets hit the push bar in the front of the car and the bottom right corner of the driver's side door. Defendant ran into a nearby empty field and could not be found.

The recordings from Ritchie's calls to dispatch were played for the jury. He relayed that he thought Paez was in the BMW. He also stated that the BMW was pulling to the curb at Cactus and First Streets. Ritchie stated that it was not Paez, and then the transcript immediately shows that Ritchie said, "Shots fired! Shots fired!" Ritchie stated, "There were shot[]s fired at me and I fired several shots south bound."

6

Two types of shell casings were found at the scene of the shooting: nine-millimeter and .45-caliber casings. A live round was also found. The casings were grouped together. An empty .45-caliber magazine was found in a dirt lot at the corner of Cactus and First Streets. A cellular telephone belonging to defendant was found just north of the area where the magazine was found.

A text message dated May 26, 2008, and transmitted at 5:51 a.m. was found on defendant's cellular telephone. The text message stated, "Without putting me on blast, I need to borrow the torch." A "torch" was gang language for needing to borrow a gun. There was another text message transmitted on May 26, 2008, at 10:25 a.m. that stated, "Stranger, everything from that car is ready to go. Hit him up and get back to me. 500 the less, 600 is what we want. Gracias. PWDX3." "PWDX3" stood for either Pancho, which was defendant's gang moniker, or Puro, West Drive, and 13. There were also photographs of defendant with other WDL gang members on his telephone.

Defendant was arrested at his cousin's house. Defendant tried to run but was apprehended. Near the apartment there was WDL graffiti stating "WD," "Varrio WDL," and "West DR X3." Near the scene of the shooting there was WDL gang graffiti on an abandoned structure. Grafitti stating "Pancho" and "West Drive X3" was on the structure.

2. *Gang evidence*

Investigator Ryan Monis testified as a gang expert. At the time of trial, he was employed as a Senior Investigator for the Riverside County District Attorney's Office. He was assigned to the Coachella Valley Violent Crime Task Force and had an extensive

background with both state and federal gang task forces. He had testified as a WDL gang expert 15 to 20 times.

WDL was a criminal street gang based in Desert Hot Springs. The area of First and Cactus Streets was WDL gang territory. The symbol for the gangs was WD or WDL. The primary activities of WDL included homicide, attempted homicides, drug sales, possession of firearms, witness intimidation, robberies, and home invasion robberies. The more violent the crime committed by the gang member, the more it instilled fear and intimidation in the community.

There were several "predicate" offenses that were presented. These included two occasions — May 23 and May 30 — during which Paez shot at officers. Paez was convicted of several crimes including murder. Another gang member was convicted of a home invasion robbery in 2005.

Investigator Monis knew defendant. Defendant had WDL tattoos. Monis believed that in May 2008, defendant was an active WDL member. Defendant had previously admitted to being a WDL member. Defendant was an older and more active member and was considered a "shot caller."

Monis interviewed Everett Gallegos in January 2011. Gallegos was a former WDL member who had been imprisoned since 2001 for a gang-related murder which was committed in 1999. Gallegos had previously testified against other WDL members. Gallegos wanted help with being placed on his parole outside Desert Hot Springs because he feared retaliation. Monis agreed to put in a good word for him.

In 2011, Gallegos was not a WDL member and was not in good standing with the gang. Gallegos told Monis that the WDL members had a strong dislike for law enforcement, and especially the Desert Hot Springs Police Department. When Gallegos was a WDL member, sometime between 1997 and 2001, he was involved in discussions with other WDL members about harming or shooting police officers. These discussions included hiding behind the Desert Hot Springs Police Department and shooting at officers who exited the building. Defendant was not present during the discussions. Gallegos stated that if a WDL member had the opportunity to shoot at a police officer, the gang member would take a shot.

In 2004, Monis spoke with another WDL gang member, Alejandro Escobar.[4] Escobar also stated that if an opportunity arose for a WDL member to shoot at a Desert Hot Springs police officer, the gang member would take the opportunity.

In 2004, Monis had observed graffiti in WDL territory that stated "187," the Penal Code section for murder, and "DHSPD," which stood for Desert Hot Springs Police Department, underneath. It was his belief, based on his training and experience, that it was written by a WDL member and it was a threat to law enforcement.

Monis listened to a jailhouse recording between defendant and Daniel Villa, another WDL gang member. They laughed about the exposure they were getting due to the shootings and the documentation in the newspaper. Villa said, "We're getting worldwide exposure."

---

[4] Monis told no one about this conversation until he began preparing for the instant case.

9

Monis, after being given a hypothetical that was the same as the facts in the instant case, proffered that the instant crime was committed for the benefit of and on behalf of the WDL gang. A big factor in deciding it was a gang crime was that there were three shootings involving WDL members against law enforcement during a seven-day period. Monis indicated that to some extent all gangs have a dislike for law enforcement.

B.     *Defense*

Defendant testified on his own behalf. He admitted becoming a WDL member in 1997 or 1998. Paez was an acquaintance through the gang but defendant did not like the way he acted. He had never heard WDL members, including Escobar, talk about killing or shooting Desert Hot Springs police officers. Defendant's attitude toward law enforcement in 2008 was to avoid them at all costs so he was not harassed.

Jessica Jimenez, defendant's girlfriend, picked him up in the BMW in the afternoon on May 26, 2008. Defendant lowered the seat all the way down to the floorboard and could not see out the back window; he never saw a police car following them.

Defendant told Jimenez to drop him off on First and Cactus Streets so he could visit his cousin who lived nearby. Defendant exited the car and leaned back in to kiss Jimenez. He started walking on Cactus; he never saw a car behind him. In his waistband, defendant had a .45-caliber gun that he had bought two weeks prior for protection against rival gang members.

As he was walking, he heard what sounded like someone racking a round into the chamber of a gun. Defendant looked over his shoulder and saw a man in dark clothing

10

standing behind the door of a car, pointing a gun at him. Defendant was focused on the gun and could not tell it was a law enforcement officer.

Within a few seconds, defendant heard a "boom" and felt a bullet graze the top of his head. In defense, he started to shoot back. He fired eight or nine rounds. Defendant was only trying to stop the person from shooting at him; he did not intend to kill the person. As defendant ran from the scene, he realized that he had been shooting at a police officer.

While defendant ran, the magazine accidently fell out of his gun and his cellular telephone fell out of his pocket.

Defendant presented his own gang expert, Enrique Tira. Tira was a private investigator who had been a police officer in Indio for 17 years. One month prior to trial, Tira spoke with Escobar. Escobar denied ever telling Monis that WDL gang members would kill Desert Hot Springs police officers if given the chance. Escobar admitted that WDL members did not like police officers but never said WDL hated law enforcement.

Tira also interviewed Gallegos. Gallegos told Tira that gang members do not like police officers and police officers do not like gang members. He had never told Monis that he overheard WDL members talk about killing Desert Hot Springs police officers. Gallegos had no knowledge of any member of WDL being ordered to kill or shoot Desert Hot Springs police officers.

Tira claimed that a gang would not want a member to shoot at a police officer because it would only cause more problems for the gang. Given hypotheticals similar to the facts of the instant case, Tira did not believe that shooting at a Desert Hot Springs

11

police officer was done for the benefit of the gang. Tira had never qualified as an expert on the WDL gang.

EXCLUSION OF EVIDENCE OF PRIOR OFFICER-INVOLVED SHOOTING

Defendant contends that the trial court abused its discretion pursuant to Evidence Code section 352 and violated his federal constitutional due process rights by excluding evidence of a previous officer-involved shooting in which Ritchie was involved to show that he had the character to overreact in high-stress situations and used excessive force in high-risk felony situations.

A.      *Additional Factual Background*

Prior to the first trial, the People filed a trial brief stating that evidence of any other shooting in which Ritchie was involved should not be allowed. The People noted that Ritchie had been diagnosed with Post Traumatic Stress Disorder *after* the shooting due to his involvement in three separate shootings during the time span of 16 months. The prosecutor also provided, "Sgt. Ritchie was cleared from criminal liability in both other shootings and there is zero evidence available to conclude otherwise." The People also argued that the type of evidence would necessitate an undue consumption of time, would confuse the issues and mislead the jury.

Defense counsel made an offer of proof as to the prior officer-involved shooting. Ritchie followed after a suspect who was riding a bicycle. Ritchie tried his taser but it did not work. Ritchie tried to get the suspect to stop but he was not listening. The man came toward Ritchie asking if he wanted to fight. Ritchie then shot him four times.

12

Defense counsel argued that in this case Ritchie overreacted when he got out of his patrol car. Ritchie opened fire without issuing any commands to defendant. It was defense counsel's theory that Ritchie was terrified, he overreacted, and opened fire on defendant; defendant shot back in self-defense. This was similar to the other shooting because he shot four times at the suspect and shooting one time would have been sufficient. The trial court wanted to hear testimony from Ritchie about the incident.

Ritchie testified at an Evidence Code section 402 hearing. In October 2007, he got into an altercation with a suspect named Sergio Lopez who did not respond to his commands. Lopez came toward Ritchie with his hands clenched. He did not have a knife or a weapon as far as Ritchie could see. Ritchie shot Lopez once in the buttocks area but he continued to come toward him. He then shot Lopez in the chest three times because Lopez continued to come toward him. Lopez died. Ritchie admitted it was a traumatic experience.

Defense counsel argued that the incident with Lopez when Ritchie shot four times was "overkill." It supported that Ritchie overreacted and shot first in the instant case. To exclude the evidence would deny defendant a defense and his right to a fair trial under the federal and state Constitutions.

The prosecutor argued that the prior shooting was not relevant. Saying that defendant overreacted was merely defense counsel's opinion. Further, even if it had some relevance, it was prejudicial, as it would involve an undue consumption of time and confuse the jury. The two incidents involved completely different scenarios. Defense

13

counsel countered that the incident showed that Ritchie only knew how to react one way in these incidents.

The trial court noted that both incidents involved Ritchie firing his weapon. However, the trial court did not see a "nexus" between the two incidents. They were two separate and distinct incidents. The trial court stated, "Also, to allow counsel, if I was to exercise an abundance of caution, if I was to allow counsel to go into this incident, quite frankly, I would be in dereliction of my duty because there would be an undue consumption of time, and under the 352 analysis, the probative value is extremely slight."

The prosecutor filed the same brief before the second trial. The trial court stated that it had reviewed the transcripts from the prior Evidence Code section 402 hearing and was prepared to hear new argument on the issue.

The People once again argued the evidence was not relevant. The two crimes were not similar. Ritchie acted within police procedure during the Lopez incident. Any minimal relevance was outweighed by the prejudice. The People would have to present an expert on excessive force, which would take up an undue amount of time. Further, every other high-pressure incident that Ritchie had been involved in and had not shot the suspect would have to be introduced.

Defendant's counsel stated the evidence was relevant to Ritchie's state of mind at the time of the instant shooting and to show habit and custom during high-risk stops. It showed Ritchie was "trigger happy." Ritchie would be placed in a false light in front of the jury.

14

The trial court ruled, "Court's ruling on that is it will be excluded pursuant to 352. I find the prejudicial effect clearly outweighs any probative value and that therefore it must be excluded, and it's excluded pursuant to 352."

B.      *Analysis*

"'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid.Code, § 210.)

"[C]haracter evidence is generally inadmissible to prove a person acted in conformity with it on a given occasion." (*People v. Myers* (2007) 148 Cal.App.4th 546, 552; Evid. Code, § 1101.) Evidence Code section 1103 provides for an exception to this general rule as follows: "(a) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character. [¶] (2) Offered by the prosecution to rebut evidence adduced by the defendant under paragraph (1)."

It has been held that in a prosecution for a homicide or assaultive crime where self-defense is raised, evidence of the violent character of the victim is generally admissible to show the victim was the aggressor. (*People v. Shoemaker* (1982) 135 Cal.App.3d 442, 446.) An officer's past use of excessive force is relevant to show

15

whether he or she acted "in character" during the incident in question. (*People v. Castain* (1981) 122 Cal.App.3d 138, 142.)

We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code section 1103. (See *People v. Davis* (2009) 46 Cal.4th 539, 602.)

Here, defendant claims that the evidence was admissible not only to show Ritchie's character for overreacting in high-stress situations, but also that he resorted to using excessive force.[5] However, the evidence of the prior shooting proved neither of these propositions. Defendant characterizes the incident with Lopez as involving excessive force and that Ritchie overreacted but he presented no evidence in the trial court to support this supposition. Ritchie described an incident where he commanded Lopez to stop. When that was unsuccessful, and Lopez approached him in a menacing manner, he shot at him once. When this still did not stop Lopez, he shot at him three more times.

The evidence presented as to the first incident did not support defendant's supposition that Ritchie used excessive force or had a character of overreacting in high-stress incidents. Ritchie did not automatically resort to shooting at Lopez. Further, Ritchie first tried to shoot Lopez in the buttocks, a non-lethal location. When Ritchie

---

**5** Defendant did not clearly state in the lower court that he was claiming that Ritchie used excessive force; however, since defendant alternatively argues that he received ineffective assistance of counsel if the claim is not reviewable on appeal, we review the claim.

16

continued to be threatened, Ritchie resorted to shooting Lopez. The prior incident did not establish Ritchie used excessive force or that he had a character for overreacting.

Moreover, even if the evidence was minimally relevant, it could be excluded under Evidence Code section 352. Relevant evidence can be excluded if its probative value is outweighed by its prejudicial effect. (Evid. Code, § 352.) Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The court's ruling on the admission or exclusion of evidence under Evidence Code section 352 "'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

Here, as argued by the prosecutor, the introduction of the evidence would have resulted in an undue consumption of time. All of the parties involved in the Lopez shooting incident would have to be called and testify. Further, the prosecutor intended to call witnesses involved in other high-stress felony situations in which Ritchie was involved to show he did not have a character for overreacting or excessive force. The trial court did not err by concluding the probative value was outweighed by the potential prejudice.

Defendant relies upon *People v. Castain, supra,* 122 Cal.App.3d 138 to support his claim that the trial court erred. In *Castain*, the defendant was convicted of battery on a peace officer and resisting arrest. (*Id.* at pp. 140-141.) The trial court excluded testimony of a witness who claimed the officer had used excessive force on another occasion. (*Id.* at p. 142.) The appellate court reversed, finding that the evidence was relevant to show the officer had a propensity to use excessive force against citizens he arrested or detained and, by inference, had acted "'in character'" during his confrontation with the defendant. (*Id.* at p. 143.)

In *Castain*, the defendant offered evidence from the victim to show the officer pulled the suspect from his car and severely beat him. (*People v. Castain, supra,* 122 Cal.App.3d at p.142.) Here, the only evidence that defense counsel offered to present was Ritchie's testimony. As noted above, there was nothing in that testimony that supported that he overreacted or used excessive force. Further, the appellate court in *Castain* noted that the testimony would be brief and that the prosecutor had delayed in finding the rebuttal witnesses. (*Id.* at p. 143.) Here, the prosecutor intended to introduce several other incidents to rebut defendant's claim of Ritchie's character which clearly would result in an undue consumption of time. This case is easily distinguishable from *Castain*.

Moreover, even if we were to assume the trial court erred by excluding evidence of Ritchie's involvement in the prior shooting of Lopez, any such error was harmless because it is not reasonably probable that a more favorable verdict would have occurred

18

had the evidence been admitted. (*People v. Rodrigues, supra,* 8 Cal.4th at pp. 1124-1125; see also *People v. Watson* (1956) 46 Cal.2d 818, 836.)[6]

No miscarriage of justice occurred in this case. Defendant was riding in a car in which Paez had previously been seen. Paez had been involved in a shootout with California Highway Patrol officers. Ritchie only followed the BMW because he thought it was Paez in the car, which dispelled any claim that he was targeting defendant. Once Ritchie realized it was not Paez in the car, he relaxed and moved his gun down. It was then that defendant shot at Ritchie.

The dispatch records support Ritchie's version of the events. He radioed that Paez was not in the vehicle. Then immediately, under the stress of the situation, stated "Shots fired! Shots fired!'' He also stated that defendant shot first and that he shot back. Without time to think about the incident, Ritchie immediately reported that defendant had shot at him first. This was strong evidence upon which the jury could conclude that defendant shot at Ritchie first.

---

[6] Defendant contends that his federal constitutional rights to present a defense were violated by the exclusion of the evidence, and therefore, the federal standard of beyond a reasonable doubt of *Chapman v. California* (1967) 386 U.S. 18, 24 applies. However, "[T]he application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution. . . ." (*People v. Marks* (2003) 31 Cal.4th 197, 226-227.) Nor do those rules impermissibly infringe on the accused's right to present a defense. (*People v. Jones* (1998) 17 Cal.4th 279, 305.) Defendant was allowed to argue that he acted in self-defense and the jury was instructed on both reasonable and unreasonable self-defense. The jury was also instructed that they had to find that Ritchie was lawfully performing his duties as a peace officer in order to find defendant guilty. Defendant was not denied a defense.

That defendant was the aggressor was further supported by evidence that other shootings by WDL members occurred within the same period of time. During these incidents, the WDL gang members initiated shootouts with law enforcement officers. There was strong evidence that WDL gang members were targeting Desert Hot Springs police officers.

Based on the foregoing, any exclusion of the evidence pertaining to Ritchie being involved in a prior shooting was harmless.

IV

ADMISSION OF GANG TESTIMONY

Defendant contends that the trial court erred by admitting "testimonial hearsay" evidence by allowing Monis to testify regarding statements made by Gallegos to prove the motive for the shooting was that WDL gang members hated Desert Hot Springs police officers and that the shooting of Ritchie benefitted the WDL gang. Such admission of testimonial hearsay violated his rights of confrontation as explicated in *Crawford v. Washington* (2004) 541 U.S. 36, 53.

A.    *Additional Factual Background*

Prior to the first trial, defendant brought a motion in limine seeking to exclude Monis's testimony presented at the preliminary hearing that there was a war between the WDL and Desert Hot Springs Police Department. According to the offer of proof, Monis traveled to Arizona to speak with Gallegos. Gallegos told Monis that he had been present with WDL members talking about shooting "cops." He recalled a conversation, which

20

involved defendant, where he or all of the members expressed a desire to ambush police officers.

Defendant argued the evidence was inflammatory and should be excluded pursuant to Evidence Code section 352. Further, he argued the statements by Gallegos were unreliable.

Prior to the first trial, the trial court addressed the motion in limine. Monis testified at an Evidence Code section 402 hearing. Monis testified essentially to the same statements made by Gallegos and Escobar that were eventually presented at the trial. Monis explained he went to talk to Gallegos because "it would be a good opportunity to discuss with Everett Gallegos about multiple cases involving West Drive Loco gang members that are currently pending and the history of the gang." Monis specifically went to the jail to discuss gang members and different cases. Gallegos spoke about other pending cases.

Monis's opinion that the crime was committed for the benefit of the gang was based on the territory where it was done and the hatred of WDL for Desert Hot Springs police officers. Shooting at police officers instilled fear and intimidation in the community. It was not common for gang members to discuss shooting law enforcement.

Defense counsel argued that the People sought to admit statements made by Gallegos and Escobar to show that defendant's motive in the shooting was because of the hatred of the WDL toward Desert Hot Springs police. Defense counsel argued that although a gang expert could rely on hearsay, the trial court should consider the reliability of the source of this information. Gallegos's information was old. Any

21

testimony by Monis about Gallegos should be excluded.  Escobar was also unreliable. The evidence was based on "unreliable hearsay and irrelevant evidence."  Further, the evidence was prejudicial.

The trial court, in making its ruling, noted that it took into account the importance of the issue and the potential of prejudice.  The issue had to be viewed in context.  There was a build up to the hatred between WDL and the Desert Hot Springs police that resulted in the three shootings in a relatively short period of time.  The arguments against admitting the evidence by counsel went to the weight of the evidence rather than the admissibility; all of the arguments could be made to the jury.  The trial court admitted the evidence.

Defendant filed a similar motion in limine before the second trial.  The parties agreed that the trial court could review the transcripts from the Evidence Code section 402 hearing from the first trial.  Defendant's counsel again objected to any testimony by Monis obtained from statements from Gallegos.  Gallegos was unreliable because he had a motive to lie in order to get transferred.  Further, no testimony from Escobar should be introduced.  The evidence had to be reliable to be introduced and it simply was not reliable.  Gallegos and Escobar were not available for cross-examination; this was unreliable hearsay.  There was no possible way to defend against the statements.  The People responded that this was relevant motive evidence.

The trial court ruled, "The Court is going to allow it for purpose of motive only, and the appropriate instruction for the basis for which the jury can consider this evidence will be given to the jury to avoid any possibility that they use this information for an improper purpose.  So it will be allowed pursuant to 352 with this appropriate instruction."

B.    *Analysis*

We need not determine if the trial court erred by admitting the statements of Gallegos through Monis's testimony based on it being testimonial hearsay, as any conceivable error was clearly harmless.  Generally speaking, "[t]he erroneous admission of expert testimony [including nontestimonial hearsay] only warrants reversal if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'  [Citations.]" (*People v. Prieto* (2003) 30 Cal.4th 226, 247, see also *People v. Davis* (2005) 36 Cal.4th 510, 538.)  A trial court's determinations under Evidence Code section 352 is also reviewed under the state standard.  (*People v. Gonzales* (2011) 51 Cal.4th 894, 924).  *Crawford* error, on the other hand, and due process violations are assessed under the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California, supra,* 386 U.S. at p. 24.  (*People v. Mena* (2012) 54 Cal.4th 146, 159; *People v. Archer* (2000) 82 Cal.App.4th 1380, 1394.)

Initially, defendant does not raise on appeal that the testimony from Escobar was inadmissible testimonial hearsay.  Escobar testified similarly to Gallegos in that he stated there was a hatred for Desert Hot Springs police officers by WDL members.  As such,

23

even had Gallegos's testimony been excluded as testimonial hearsay, Escobar's statements would have been admitted.

Further, the jury was given a limiting instruction on the statements made by Gallegos and Escobar. It stated, "Senior Investigator Ryan Monis and private Investigator Enrique Tira testified that in reaching their conclusions as expert witnesses, they considered statements by Everett Gallegos and Alejandro Escobar. You may consider those statements only to evaluate the experts' opinion[s]. Do not consider those statements as proof that the statement contained in the statement is true." Hence, we must presume that the jury followed the limiting instruction and did not convict defendant based only on these statements. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

Finally, as set forth *ante*, there was other considerable evidence presented that defendant was the initial shooter in this incident. Further, based on the other shootings around the same time, it was reasonably inferred by the jury that there was some sort of objective by WDL gang members to shoot law enforcement. Based on the foregoing, defendant cannot show prejudice by the admission of the statements made by Gallegos.

V

ACTIVE PARTICIPATION IN A GANG PURSUANT TO

SECTION 186.22, SUBDIVISON (a)

Defendant argues that the evidence presented was insufficient to support his conviction for active participation in a street gang pursuant to section 186.22, subdivision (a) based on the recent California Supreme Court case of *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*). Respondent concedes in its brief that the conviction must be

24

reversed.

"The substantive offense defined in section 186.22[, subdivision] (a) has three elements. Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive, is the first element of the substantive offense defined in section 186.22[, subdivision] (a). The second element is 'knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and the third element is that the person 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' [Citation.]" (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)

The California Supreme Court has held that the third element of the offense is not satisfied when a gang member commits a felony while acting alone. The word "members," as the Supreme Court explained, "is a plural noun." (*Rodriguez, supra,* 55 Cal.4th at p. 1132.) "Therefore, to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct. The plain meaning of section 186.22[, subdivision] (a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." (*Ibid.*) The felonious criminal conduct referred to in the statute must be committed "'by members of that gang.'" (*Id*. at p. 1131.)

Here, there was no evidence presented that a fellow WDL member was with defendant when he shot at Ritchie. Defendant only provides citation to the record for the first trial. However, defendant was convicted of the section 188.22, subdivision (a)

offense at the first trial. We have only briefly reviewed the testimony from the first trial in order to reach our conclusion that defendant was not accompanied by a fellow gang member at the time he shot at Ritchie. Defendant had exited the car and the only evidence before the jury was that his girlfriend was the driver. There was no evidence that she was a WDL gang member and she had left the scene prior to the shooting. Defendant only started shooting at Ritchie when he was alone.

As such, we agree that defendant's section 186.22, subdivision (a) conviction must be reversed. Since the trial court stayed the sentence on this count, there is no impact on the resulting sentence in this case.

VI

CUMULATIVE ERROR

Defendant contends that the cumulative errors occurring at trial violated his federal constitutional rights to due process mandating reversal. Even assuming error, and viewing the errors as a whole, we conclude that any errors do not warrant reversal of the judgment. (*People v. Stitely* (2005) 35 Cal.4th 514, 560.)

## VII

## DISPOSITION

We strike defendant's conviction of active gang participation pursuant to section 186.22, subdivision (a) in count 3. We order the clerk of the Riverside County Superior Court to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

27