Filed 5/5/21  P. v. Quiros CA2/2

## **NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MONICA QUIROS,<br><br>    Defendant and Appellant. | B299444<br><br>(Los Angeles County<br>Super. Ct. No. BA470044)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>PETITION FOR REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:*

The opinion herein, filed on April 14, 2021, is modified as follows:

On page 12, under subheading C., in the second paragraph, delete the last sentence that reads:  "The record discloses no brief filed or any further effort to call a witness on this point before defendant rested her case" and replace it with the following: "After the prosecution rested, the trial court held a further

hearing and denied defendant's request to inquire further as to the 2009 and 2010 domestic violence incidents."

The modification does not affect the judgment. Appellant's petition for rehearing is denied.

_____

\*      LUI, P. J.         CHAVEZ, J.         HOFFSTADT, J.

Filed 4/14/21  P. v. Quiros CA2/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B299444 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA470044) |
| v. | |
| MONICA QUIROS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Garcia, Judge.  Affirmed.

Klapach & Klapach and Joseph S. Klapach for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Nancy L. Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Monica Quiros (defendant) appeals her conviction, following a jury trial, of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)).[1] The jury found that defendant personally inflicted great bodily injury on the victim, Corey Moses. (§ 12022.7, subd. (a).) The trial court suspended imposition of sentence and placed defendant on three years of formal probation.

We affirm the judgment.

## FACTUAL BACKGROUND

In the mid-afternoon on July 29, 2018, defendant and her girlfriend Sydney Sanford were near the intersection of Hollywood Boulevard and Vine Street. They encountered Moses, loudly expressing frustration at passersby. Moses is six feet two inches tall and weighs 170 pounds. Defendant and Sanford are both approximately five feet three inches tall and weigh 108 pounds. Defendant and Sanford looked at each other and shook their heads. Moses said, "Mind your fucking business. I'm not talking to you," and walked away.

Sanford called Moses a "fucking bum." Moses turned around and said, "I'm not confused about my sexuality. [You] don't know if you are a man or a woman." Moses and Sanford cursed at each other, and a physical altercation ensued.

Moses testified that Sanford punched him in the face. He responded by punching Sanford in the face. Defendant intervened and she and Moses began shoving each other. Moses testified that he shoved defendant to the other side of an adjacent city bench. Defendant paused for a few seconds, then "came back around" and stabbed Moses on his left side, near the ribcage.

_____

[1] All further statutory references are to the Penal Code.

Moses lifted his shirt and saw blood.  Defendant said, "Yeah, nigger," and fled with Sanford.

Defendant testified that she and Sanford were trying to get away from Moses when she noticed Sanford was no longer by her side.  Defendant turned around and saw Sanford and Moses facing each other approximately three feet behind defendant.  Moses was yelling at Sanford.  Defendant yelled, "Get away from her," stepped between Moses and Sanford, and placed her hand on Moses's chest.  Moses responded by punching Sanford in the eye.  He then hit defendant twice – once across her mouth and the second time on the left side of her jaw.  Defendant fell to the ground.  When she stood up again, Moses raised his fists and approached.  Defendant then pulled out her pocketknife and stabbed Moses in self-defense.

Ramiro Lopez witnessed the altercation while stopped in his car at a red light.  He testified that he saw defendant, Sanford, and Moses engaged in a physical altercation.  Lopez described the altercation as follows:  "They were on the sidewalk.  There was an altercation.  They were standing.  I saw a lot of tugging, pulling, shoving that kind of altercation."  Lopez testified that he did not at any time see Moses strike, punch, or hit either defendant or Sanford.  Lopez described the altercation as a "scuffle."  He saw defendant and Sanford run away.  He then saw Moses raise his shirt, and blood running down Moses's side.

After defendant and Sanford fled from the scene, they crouched by a gate and called a rideshare vehicle.  They were arrested shortly thereafter.

Neither defendant nor Sanford had any visible injuries.  After her arrest, defendant declined medical attention.  Police officers recovered a Swiss Army style pocketknife with blood

residue in the backseat of the rideshare car.  Defendant stipulated at trial that the knife belonged to her.

Moses suffered a stab wound in his left torso.  He underwent surgery the following day to repair a damaged diaphragm.

## CONTENTIONS ON APPEAL

Defendant contends the judgment must be reversed for the following reasons:

I.  The trial court erred by failing to instruct the jury, sua sponte, on self-defense pursuant to CALCRIM No. 3471 and by failing to modify CALCRIM No. 3472 to include a self-defense instruction.

II.  The trial court violated defendant's right to confrontation of witnesses by limiting cross-examination of Moses about past incidents of domestic violence and by excluding a witness who could testify concerning Moses's past domestic violence.

III.  The prosecutor committed misconduct by allowing Moses to testify falsely about his domestic violence history and by making false statements about Moses's domestic violence history during closing argument.

IV.  Substantial evidence did not support the jury's verdict.

V.  To the extent defendant is found to have waived any of her appellate challenges, she was denied effective assistance of counsel.

VI.  The cumulative effect of the errors below warrant reversal of the judgment.

4

**DISCUSSION**

## I. Alleged instructional error

We review de novo defendant's claim of instructional error. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) In doing so, we consider the jury instructions as a whole, and in context with other instructions, to determine whether there was a reasonable likelihood the jury misapplied the court's instructions. (*People v. Wilson* (2008) 44 Cal.4th 758, 803.)

Even if instructional error is established, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result if the omitted instruction had been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

### A. CALCRIM No. 3471

A trial court has a sua sponte duty to instruct the jury on a defense "'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 157, quoting *People v. Sedeno* (1974) 10 Cal.3d 703, 716.) The trial court here found, in ruling on defendant's posttrial motion to dismiss, that the evidence did not support a duty to instruct pursuant to CALCRIM No. 3471.[2]

The CALCRIM No. 3471 instruction applies to initial aggressors and mutual combatants and specifies the circumstances under which such persons may assert a limited right of self-defense. Mutual combatants are those who do not

---

[2] The record does not support defendant's contention that the trial court denied her motion because the instruction was inconsistent with the defense theory of the case.

merely engage in a reciprocal exchange of blows, but who do so pursuant to mutual intention, consent, or agreement preceding the initiation of hostilities. (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1044-1045.) CALCRIM No. 3471 states that a defendant who was an initial aggressor or mutual combatant may assert a limited right of self-defense when the defendant (1) actually and in good faith tried to stop fighting; (2) made the opponent aware that the defendant wanted to stop fighting; and (3) made the opponent aware the defendant had stopped fighting.[3] (CALCRIM No. 3471.)

---

[3] CALCRIM No. 3471 provides: "A person who (engages in mutual combat/[or who] starts a fight) has a right to self-defense only if: 1. (He/She) actually and in good faith tried to stop fighting; [AND] 2. (He/She) indicated, by word or by conduct, to (his/her) opponent, in a way that a reasonable person would understand, that (he/she) wanted to stop fighting and that (he/she) had stopped fighting(;/.) <Give element 3 in cases of mutual combat.> [AND 3. (He/She) gave (his/her) opponent a chance to stop fighting.]

"If the defendant meets these requirements, (he/she) then had a right to self-defense if the opponent continued to fight.

"[However, if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force and was not required to try to stop fighting(,/or) communicate the desire to stop to the opponent[, or give the opponent a chance to stop fighting].]

"[A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose.]"

6

There was no evidence that defendant was either the initial aggressor or a mutual combatant at the time she intervened between Moses and Sanford. Defendant testified that she urged Moses to "get away" and attempted to physically separate Moses and Sanford by placing herself between them.

Defendant maintains the jury could have concluded she was the initial aggressor because she either placed her hand on Moses's chest (according to defendant's testimony) or shoved him (according to Moses) at the time she intervened and because the jury was instructed, pursuant to CALCRIM No. 3470, that the slightest touching can be unlawful.[4]

There was no evidence, however, that defendant attempted to stop the fight after she and Moses began either shoving or hitting each other. There was also no evidence that Moses responded to defendant's unlawful touching with sudden and deadly force. The trial court did not err by concluding the evidence did not support application of CALCRIM No. 3471.

*People v. Quach* (2004) 116 Cal.App.4th 294, on which defendant relies, is inapposite. The court in that case reversed an attempted murder conviction because although the trial court instructed the jury that a mutual combatant has a right of self-defense if attempting to stop the fight, the trial court failed to instruct that the mutual combatant has a right to self-defense if the opponent responds with sudden deadly force. (*Id.* at pp. 300-302.) Here, there was no evidence that defendant and Moses

---

[4]     The relevant language in CALCRIM No. 3470 states: "The slightest touching can be unlawful if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind."

7

were engaged in mutual combat when she intervened, and there is no evidence that Moses responded to defendant's intervention with deadly force. Although Moses either shoved or punched defendant, there was no evidence that his response constituted deadly force.

The trial court's failure to instruct the jury with CALCRIM No. 3471 did not negate defendant's self-defense theory. The trial court gave several self-defense instructions, including CALCRIM Nos. 3470, 3472, and 3474. The record discloses no instructional error.

## B. Modification of CALCRIM No. 3472

Defendant contends the trial court should have modified CALCRIM No. 3472[5] to instruct the jury that an initial aggressor has a right of self-defense if the opponent responds to the initial provocation with excessive or deadly force. Defendant provides no authority supporting the proposition that the court had a sua sponte duty to modify the instruction in this manner. To the extent defendant believed the instructions were incomplete or needed elaboration, it was her obligation to request additional or clarifying instructions. (*People v. Dennis* (1998) 17 Cal.4th 468, 514.) Her failure to do so forfeits the claim on appeal. (*Ibid.*)

Moreover, for reasons discussed in section IA above, the evidence did not support modification of CALCRIM No. 3472. There was no evidence that defendant attempted to stop the fight after she and Moses began shoving or hitting each other. There was also no evidence that Moses responded to defendant's unlawful touching with sudden and deadly force.

---

[5] The trial court instructed the jury pursuant to CALCRIM No. 3472, which states: "A person does not have the right to self-defense if he or she provokes a fight or quarrel."

### C. **No prejudicial error**

Even assuming the trial court's failure to instruct the jury with CALCRIM No. 3471 and to modify CALCRIM No. 3472 constituted error, defendant cannot demonstrate prejudice. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) The ultimate issue for the jury was whether defendant used unreasonable force by stabbing Moses with a pocketknife during the altercation.

The record shows the jury was instructed on self-defense. The jury was given CALCRIM Nos. 3470 (Right to Self-Defense or Defense of Another (Non-Homicide)), 3472 (Right to Self-Defense: May Not Be Contrived), and 3474 (Danger No Longer Exists or Attacker Disabled). CALCRIM No. 3470 explained that the People had "the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense." The jury was also instructed that self-defense was a legal defense to the charge of assault with a deadly weapon. The record shows the jury considered defendant's self-defense theory but rejected it.

The jury instructions given did not result in a miscarriage of justice. Defendant's conduct in stabbing Moses after he shoved her away negates her claim that she acted in self-defense. Both the driver of a rideshare vehicle and defendant entered after the assault and arresting officers observed no defensive wounds on defendant. Defendant's use of the pocketknife to stab Moses, and Moses's need for surgery the following day to repair damage caused by the stab wound, constitute substantial evidence that defendant used unreasonable force. Defendant has not demonstrated that she would have obtained a more favorable result had CALCRIM No. 3471 or a modified CALCRIM No. 3472 been given. She fails to establish that prejudicial error occurred.

9

## II. Confrontation of witness

### A. Applicable law and standard of review

The constitutional right of confrontation of witnesses includes the right to cross-examine adverse witnesses on matters reflecting on their credibility. (*People v. Dalton* (2019) 7 Cal.5th 166, 214.) Not every restriction on a defendant's cross-examination, however, violates the Constitution. "The trial court retains wide latitude to restrict repetitive, prejudicial, confusing, or marginally relevant cross-examination. Unless the defendant can show that the prohibited cross-examination would have created a significantly different impression of the witness's credibility, the trial court's exercise of discretion to restrict cross-examination does not violate the constitutional right of confrontation." (*People v. Sanchez* (2016) 63 Cal.4th 411, 450-451.)

A trial court also has broad discretion under Evidence Code section 352 to determine whether the probative value of evidence is outweighed by concerns of undue prejudice, confusion, or consumption of time. (*People v. Lewis* (2001) 26 Cal.4th 334, 374-375.) We review for abuse of discretion defendant's claim that the trial court's restriction of the scope of cross-examination violated her rights under the confrontation clause. (*People v. Peoples* (2016) 62 Cal.4th 718, 765.)

### B. Evidentiary rulings

At a pretrial evidentiary hearing, defendant's trial counsel expressed his intent to present evidence of Moses's history of domestic violence. Moses was arrested in 2008 for misdemeanor domestic battery. Moses's then girlfriend (who is also the mother of his child) subsequently filed a request for a restraining order, accompanied by a declaration referring to Moses's alleged acts of

violence in 2009 and 2010. Defense counsel sought to call Moses's former girlfriend to testify about the contents of the declaration as propensity evidence under Evidence Code section 1103. The prosecutor argued in response that the 2009 and 2010 alleged incidents did not result in convictions or a restraining order; the incidents occurred ten years ago and involved domestic violence against Moses's former girlfriend; whereas the circumstances of this case involved violence against strangers.

The trial court ruled that the defense could ask Moses about the facts concerning the 2008 incident. The court precluded, under Evidence Code section 352, reference to any other past allegedly violent conduct by Moses. The trial court deferred ruling, until after Moses's testimony, on whether Moses's former girlfriend could be called by defendant to testify as a witness.

Moses testified on direct examination that he was arrested in 2008 and charged with domestic violence. He said he was not convicted in connection with that arrest but attended classes. Moses further testified that since the 2008 arrest, he had not been arrested or convicted of any crimes involving violence or assault.

On cross-examination, Moses described his relationship with his former girlfriend and the circumstances leading to his 2008 arrest. Moses testified that his then girlfriend "would beat on me, and I wouldn't put my hands on her. I would never put my hands on her. But after awhile, as a human being, you can't be nobody's punching bag, man, woman. . . . [¶] . . . The cops came, one of us has to go. Me being a man, hey."

The following exchange between defense counsel and Moses then occurred:

11

"[Defense counsel]: One of the thin[g]s you told us earlier on direct examination was that since that arrest in 2008, you haven't had any domestic violence incidents, is that correct?

"[Moses]: Right.

"[Defense counsel]: That is not true at all, is it, sir?"

The prosecutor objected that defense counsel's question exceeded the scope of the trial court's ruling limiting inquiry into Moses's domestic violence history. The trial court sustained the objection. The defense subsequently rested without seeking to call Moses's former girlfriend as a witness.

## C. **No abuse of discretion**

Defendant fails to establish any abuse of discretion. The record shows that defense counsel was allowed to cross-examine Moses about his 2008 arrest for domestic violence. The trial court precluded cross-examination about other alleged but unproven incidents of domestic violence against Moses's girlfriend in 2009 and 2010. The trial court offered to revisit the issue of whether Moses's former girlfriend could testify for purposes of impeaching Moses's testimony; however, the defense never sought to present her as a witness.

"The court will allow the cross-examination as to the incident in 2008. The court, on [Evidence Code section] 352 analysis, the court will preclude any reference to any further conduct. [¶] I will review whatever brief is filed by the parties as to whether or not any external extrinsic evidence is admissible on those." The record discloses no brief filed or any further effort to call a witness on this point before defendant rested her case.

At oral argument defendant took the position that *People v. Castain* (1981) 122 Cal.App.3d 138 (*Castain*) controlled. We find that *Castain* does not support defendant's argument that

12

excluding evidence concerning the 2009 and 2010 domestic violence incidents was an abuse of discretion. The defendant in *Castain* argued that he could not be convicted of battery on a police officer and resisting arrest because the arresting officer, Revak, had used excessive force. (*Id.* at p. 142.) He sought to introduce testimony by two other individuals who claimed Revak had used excessive force on other occasions, but the trial court excluded the proffered testimony under Evidence Code section 352. The Court of Appeal held that exclusion of such testimony was an abuse of discretion. The court reasoned that the testimony was "highly probative" to show that Revak had a propensity to use excessive force against persons he arrested or detained or a pattern of behavior in this regard. (*Id.* at p. 143.) The court in *Castain* further reasoned that "[a] jury, hearing evidence of only one other violent confrontation involving the officer, might conclude it was an isolated aberration" but "would be much less likely to reach that conclusion if it had heard evidence of two such incidents." (*Ibid.*) Unlike *Castain*, Moses's history of domestic violence against his longtime girlfriend and mother of the child was not "highly probative" to show a propensity to initiate violent contact with strangers on a public street or a pattern of behavior toward such strangers.

The record discloses no abuse of discretion. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (*Delaware v. Fensterer* (1985) 474 U.S. 15, 20.) A trial court's exercise of its discretion to limit cross-examination does not violate the Sixth Amendment unless the defendant can show that the prohibited examination would have produced "'a significantly

13

different impression'" of the witness's credibility. (*People v. Hamilton* (2009) 45 Cal.4th 863, 943.) Defendant fails to make such a showing.

## III. Alleged prosecutorial misconduct

Defendant contends the prosecutor committed misconduct by eliciting false testimony from Moses that since his 2008 arrest, he had not been arrested or convicted of any crimes involving violence or assault, by not correcting that allegedly false testimony, and by stating during closing argument that Moses had not been involved in any incidents of violence since 2008. During closing argument, the prosecutor stated: "There is the 2008 misdemeanor arrest for the domestic violence incident that he [Moses] even admitted to that he didn't suffer a conviction for. He does not have any arrest or conviction or anything involving violence or assault, anything like that since then, over 10 years ago."

Defendant forfeited her claim of prosecutorial misconduct by failing to object to the allegedly improper questioning, Moses's response, and the prosecutor's allegedly false or misleading closing argument. "'A defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety.' [Citation.]" (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

Even absent such forfeiture, there was no evidence that Moses's testimony was false or that the prosecutor made false statements during closing argument. There was no evidence that Moses was subsequently arrested or convicted of any crimes involving violence or assault. The unsubstantiated declaration of

14

Moses's former girlfriend, which was never introduced or admitted into evidence, does not state that Moses was arrested or convicted for alleged acts of domestic violence in 2009 and 2010. The defense did not seek to have Moses's former girlfriend testify at trial, and the trial court did not preclude her from testifying as a witness.

*People v. Daggett* (1990) 225 Cal.App.3d 751, on which defendant relies, is inapposite. The court in that case reversed the conviction on the ground that the trial court erroneously excluded evidence that the minor victim in a child molestation case had previously been molested by persons other than the defendant. (*Id.* at p. 757.) That error was then compounded when the prosecutor argued to the jury that "[i]nappropriate sexual behavior is not inherent in children," and that the victim must have learned about oral copulation and sodomy from being "being exposed to it" by the defendant. The court in *Daggett* explained that "[t]he prosecutor asked the jurors to draw an inference they might not have drawn if they had heard the evidence the judge had excluded" and therefore "unfairly took advantage of the judge's ruling." (*Id.* at p. 758.) Here, in contrast, the trial court allowed evidence and cross-examination concerning Moses's 2008 arrest for domestic violence. Although the court limited the inquiry to that incident, it did not preclude testimony from Moses's former girlfriend. Rather the trial court reserved ruling on that issue until after Moses testified. Defendant never sought to have Moses's former girlfriend testify as a witness, and there was no evidence, excluded or otherwise, that Moses was subsequently arrested or convicted for other domestic violence incidents.

The record accordingly does not support defendant's claim of prosecutorial misconduct.

## IV. Substantial evidence supports the verdict

We review defendant's challenge to the sufficiency of the evidence supporting her conviction under the substantial evidence standard. Under that standard, we review the record as a whole in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) In doing so, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Substantial evidence supports the jury's verdict. Moses testified that when defendant intervened between him and Sanford, Moses and defendant began shoving one another back and forth. After Moses shoved defendant several feet away from him, defendant paused, and then approached and stabbed Moses in the side, damaging his diaphragm.

Lopez's testimony corroborated in part Moses's version of events. Lopez testified that he saw a scuffle between defendant and Moses. The two were pushing and pulling at each other while standing on the sidewalk. Lopez did not see any punches or blows exchanged during the scuffle. Lopez saw defendant and Sanford run away. He then saw Moses lift his shirt and blood running down Moses's side.

On appeal, defendant reiterates her version of the incident, insisting that she intervened between Moses and Sanford in an effort to stop the fight, that she merely placed her hand on

16

Moses's chest, that Moses responded by punching her and Sanford in the face, and that stabbing Moses was in reasonable self-defense. The jury rejected defendant's self-defense claim, and we do not reweigh the evidence or reevaluate issues of credibility. (*People v. Ochoa, supra,* 6 Cal.4th at p. 1206.) Defendant fails to establish any grounds for overturning the jury's verdict.

## V. Ineffective assistance of counsel

The Sixth Amendment right to assistance of counsel includes the right to the effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 686-694; see also Cal. Const., art. I, § 15.) It is the defendant's burden to demonstrate that trial counsel was inadequate and that prejudice resulted. (*Strickland v. Washington,* at pp. 686-694.) Prejudice is shown by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694.) We review an ineffective assistance of counsel claim de novo. (*People v. Taylor* (1984) 162 Cal.App.3d 720, 725.)

Defendant fails to sustain her burden of demonstrating prejudice. For reasons discussed, defendant fails to establish that she would have obtained a more favorable result had defense counsel not failed to request CALCRIM No. 3471 or a modified CALCRIM 3472, to object to the prosecutor's alleged misconduct, or to object to the exclusion of evidence concerning Moses's past acts of domestic violence.

## VI. Cumulative error

Defendant fails to establish any prejudicial error in the trial court below. There is accordingly no cumulative error that warrants reversal of the judgment.

17

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

CHAVEZ

We concur:


_____, P. J.

LUI


_____, J.

HOFFSTADT